FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JUL 2 2 2008

Stephan Harris, Clerk
Cheyenne

LYNN BOAK, ESQ.
2481 County Road 218
Cheyenne, WY 82009
(307) 634-6713
E-mail: lynnboaklaw@millect.com

ELIAS AOUN, ESQ.
1730 N. Lynn St., # A-22
Arlington, VA 22209-2004
Telephone: (202) 257-7796
E-mail: eliaoun@yahoo.com

Attorneys for the Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| MARILYN WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO:  2:08-cv-00156-CAB |
| | ) | |
| UNITED SATES OF AMERICA, | ) | **AMENDED COMPLAINT** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.    INTRODUCTION

1.    Plaintiff Marilyn Wallace filed a complaint in the U.S. District Court for the District of Columbia against Defendant (Case No. 07-1837-RMU) seeking damages for Illegal Tax Collections under IRC §7433. Honorable

U.S. District Judge Ricardo M. Urbina issued an Order on June 3rd 2008 denying the Department of Justice (DOJ) motion to dismiss and transferring the case to the U.S. District Court of Wyoming.

## II.   SUMMARY OF FACTS

2.    Plaintiff Marilyn Wallace is the sole supporter of herself and main financial supporter of her husband. She is a resident of Buffalo, Wyoming and a retiree from the Michigan Public School System.

3.    For tax years 1985 through 1993, Plaintiff filed her tax returns on time and owed zero dollars.

4.    For tax years 1994 through 2003, Plaintiff did not file her tax returns on time. Therefore, the IRS completed tax returns for her.

5.    On May 14, 2001, the IRS issued a Notice of Levy to the Michigan Public School Employees Retirement System allegedly due to tax penalties owed by Plaintiff for the years of 1985-1994 in the amount of $6,573.00. (Exhibit D).

6.    On September 25, 2001, the IRS levied Plaintiff's teaching pension, and the state of Michigan began withholding $945.54 per month. This continued until June 2006, and a total of $53,895.78 (Exhibits E & F)

was illegally removed from her pension. In addition, $3,449.10 was levied from Plaintiff's social security checks (Exhibit H).

7.    Later, Plaintiff filed corrected tax returns as follows: for 1994, on August 18, 2004; for 1995 through 1997, on October 13, 2005; and for 1998 through 2003, on May 23, 2005. Upon filing, the approximate total amount owed for 1994 through 2003 was $4,007. If one is to add this amount to the $6,573.00 in tax penalties for years of 1985-1994 (Exhibit D), then the total would be $10,580.

8.    The IRS service center accepted the back returns, but did not send Plaintiff the excess money levied from her and which Plaintiff did not believe she owed.

9.    After the assessment and amended returns, the levy continued. Assessment took place within six weeks from filing or amending returns.

10.   On .May 25, 2006, Plaintiff met with IRS Agent Thomas Bentley in Billings, Montana, and the IRS terminated the levy immediately.

11.   Plaintiff corresponded with the IRS by mail and phone and had filed two Administrative Claims for Unauthorized Collection Actions with the IRS.

12.   On March 16, 2007, the IRS sent Plaintiff two checks for a total amount of $10,954.18 (Exhibit A). The checks were received long after the

- 3 -

assessment time period and subsequent to the administrative claims being filed.

13. Terminating the levy and refunding money to Plaintiff were clearly an acknowledgment by the IRS that the levy was excessive or unauthorized in the amount which was levied.

14. For Defendant to claim that Plaintiff owes "nearly $69,000" is not sufficient to make Plaintiff liable for this amount. A mere declaration that Plaintiff owes money has no legal standing, and particularly not in the face of Plaintiff's disagreement.

## III. ISSUES

15. Some of the issues settled by Judge Urbina, and presumably not contested by Defendant, include:

    a) The proper venue for this case is Wyoming, the judicial district in which the plaintiff resides.

    b) Plaintiff has exhausted her administrative remedies.

    c) Plaintiff has complied with the 2-year statute of limitations.

16. The only issues remaining before this Court are:

    a) Whether Plaintiff has a claim under 26 U.S.C. §7433; and if so,

    b) The amount of damages, interest, attorneys' fees, costs, and other relief the Court deems appropriate.

## IV.  ANALYSIS

17. This Amended Complaint will summarize arguments in Plaintiff's favor.
    In analyzing this case, the court must treat the complaint's factual
    allegations - including mixed questions of law and fact - as true and
    draw all reasonable inferences in the plaintiff's favor. *Macharia v. United
    States*, 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. for Relief &
    Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C.Cir.2003).

18. 26 U.S.C. § 7433(a) specifically provides a remedy in a United States
    district court. It says: "If, in connection with any collection of Federal tax
    with respect to a taxpayer, any officer or employee of the Internal
    Revenue Service recklessly or intentionally, or by reason of negligence,
    disregards any provision of this title, or any regulation promulgated
    under this title, such taxpayer may bring a civil action for damages
    against the United States in a district court of the United States."

19. To win her case, Plaintiff must demonstrate that the IRS did not follow
    the prescribed methods of acquiring assets. 28 U.S.C.A. § 2410; *Brewer
    v. C.I.R.*, 430 F. Supp. 2d 1254, 1260 (S.D. Ala. 2006). Plaintiff has only
    to show that Defendant did commit one act in contradiction to the
    Internal Revenue Code. One violation alone is sufficient for this Court to

issue a summary judgment in favor of Plaintiff – and restore to Plaintiff her rights as soon as possible.

20. Plaintiff will certainly present the Court with more than one IRS violation. In the meantime, Plaintiff would like to ask this Court to multiply damages authorized under section 7433 by the number of violations committed by Defendant.

21. IRS violation no. 1 --- Plaintiff alleges Defendant's violation of 26 USC §6331(h) which states:

> (1) If the Secretary approves a levy under this subsection, the effect of such levy on specified payments to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released. Notwithstanding section 6334, such continuous levy shall attach to up to 15 percent of any specified payment due to the taxpayer.
> (2) For the purposes of paragraph (1), the term "specified payment" means—
>> (A) any Federal payment other than a payment for which eligibility is based on the income or assets (or both) of a payee,
>> (B) any payment described in paragraph (4), (7), (9), or (11) of section 6334 (a), and
>> (C) any annuity or pension payment under the Railroad Retirement Act or benefit under the Railroad Unemployment Insurance Act.

22. Section 6331 does not show that a levy could extend to Plaintiff's retirement pension benefit, and Defendant has not shown any provision of the Code to prove that it could.

23. IRS violation no. 2 --- Plaintiff filed and paid timely on her returns for years 1985 through 1993. However, the IRS, in 2001, penalized Plaintiff $500 per year (Exhibit D). Such a penalty was illegal for some of these years due to the statute of limitations.

24. Assessment is normally six weeks after filing, and the statute of limitations begins after the sixth week. It was more than ten years after the assessment, for some of these years, when the penalty was imposed. Regardless of whether the $500 penalty is right or wrong, the IRS penalties for some of these years were illegal since they were imposed after the statute of limitations had run.

25. IRS violation no. 3 --- The "Notice of Levy" was issued for $6,573.00 (Exhibit D). Can Defendant present copies of other notices of levy pursuant to which tens of thousands of dollars of Plaintiff's money (Exhibits E & F) were levied? Inasmuch as Plaintiff does not have such copies, Plaintiff alleges deficiency in notice and Defendant's violation of 26 USC §6303.

26. IRS violation no. 4 --- Did the IRS give notice and an opportunity for a hearing before the levy of any amount beyond what is listed in Exhibit D? Plaintiff's records indicate that she received notice only for the amount

listed in Exhibit D. Unless Defendant can show otherwise, Plaintiff alleges Defendant's violation of 26 USC §6330 and §6320.

27. <u>IRS violations nos. 5 to 16</u> --- For the year 1994, in the DOJ/IRS report, pp. 1 to 10, lists the last payment as October 31, 2005. The tax lien was not released until May 2007. 26 USC §6331(c) states that a levy continues "until the amount due ... is fully paid" – but not after that period. The levy against Plaintiff was officially still on the record, despite the fact that her obligations – whether agreed with or not – had been fully met and paid for. Releasing the levy should have been done subsequent to the last payment, and not a year-and-a-half later – a clearly illegal omission by the IRS.

28. This violation – keeping the levy on record for an unreasonable period after the amount due was fully paid – is repeated for years 1985, 1986, 1987, 1988, 1989, 1990, 1991, 1997, 1999, and 2000. Also, tax year 1998 does not show that the levy has been released yet, although the balance is zero. The total is twelve violations for failure to release levy on time.

29. <u>IRS violation no. 17</u> --- On May 25, 2006, Mrs. Wallace met with IRS Agent Thomas Bentley in Billings, MT. After Plaintiff discussed her situation, the agent told Plaintiff that he was sending the pension payor a

fax and was stopping the levy. **The agent immediately ended the levy while Plaintiff was still in his office.** In about a month, the second pension check after this meeting, Plaintiff began receiving her full pension payments without any IRS deductions. Agent Bentley's action was an implicit IRS admission that the levy was already in excess of at least $1.00 and that the garnishment was illegal for at least one day. If the IRS did not illegally have a levy for a day more than what was necessary, then why did Agent Bentley stop the levy immediately on that day?

30. IRS violation no. 18 --- On March 16, 2007, the IRS sent Plaintiff two checks totaling $10,954.18 (Exhibit A). This is clearly an acknowledgment by the IRS that the levy was excessive or unauthorized in the amount which they levied. If the IRS had not levied $1.00 more than what was necessary, then why did they issue a refund?

31. As shown, IRS agent Bentley ended the levy in May 2006, but the refund was not received until March 2007. Normally, a refund is sent within six weeks. Plaintiff's husband received his refund from an excess in Social Security levy in about six weeks. In Plaintiff's case, it took almost a year. This delay is clearly reckless, negligent or illegal. As a result of this, the amount of interest and damages must be increased.

Reckless, intentional, or negligent discrepancies for years 1985 to 1993

32. For tax year periods 1985 through 1993, Plaintiff filed tax returns on time and jointly with her husband. Plaintiff's husband, Mr. Fred Wallace, received a "Certificate of Release of Federal Tax Lien" (serial no. 849844493) showing March 2, 1998 as date of assessment for all of these years and an unpaid balance of $500 per year, totaling $4,500.

33.     Defendant did not include on the Certificate the interest amount which was levied. While Plaintiff was under the impression that she was levied for $4,500 for years 1985 through 1993, the approximate total Plaintiff had actually paid was $6,438 – according to the IRS/DOJ 111-page report. Plaintiff was put in a situation where she was told an amount owed and paid on the Certificate less than what was actually levied.

Reckless, intentional, or negligent discrepancies for tax year 1994

34. For tax year 1994, Defendant offers the court two certificates of official records – both of which are certified as to accuracy but contradictory to each other as to amount owed.

35. According to the IRS report, if one adds all the amounts allegedly owed by Plaintiff (on pages 1 to 10), the sum total would be $28,108.65; this

1994 report showed Plaintiff still owing $457.13. However, according to pages 107 to 111, Plaintiff owed $745 (penalty plus interest) – and a balance equal to zero. Certainly, two different "certified" amounts "owed" for the same year cannot be accurate – especially since one report was issued only two months after the other.

36. The first $945.54 payment toward year 1994 was levied on February 3, 2003 prior to the IRS assessment date of February 17, 2003. A "credit" of $393.16 was applied on January 28, 2003. In other words, the IRS was levying Plaintiff and making payments for that particular year even prior to ascertaining whether or not Plaintiff owed money for that year. This is a clearly illegal action by the IRS.

37. In addition, a "Certificate of Release of Federal Tax Lien" (serial no. 148836803) shows a February 17, 2003 date of the year 1994 assessment for an amount of $16,529.46.

38. Another "Certificate of Release of Federal Tax Lien" (serial no. 849844493) issued to Plaintiff's husband shows an unpaid balance of $500 for year 1994. Plaintiff and her husband filed jointly for that year.

39. In summary, and according to IRS records, Plaintiff had an unpaid balance of $16,529.46 (according to certificate no. 148836803), paid a balance of $28,108.65 (according to DOJ/IRS report on pages 1 to 10),

but owed only $745 (according to pages 107 to 111 of report) or $500 (according to certificate no. 849844493).

40. When Defendant claims that Plaintiff owes "nearly $69,000", which one of these figures are part of their calculation? Defendant, who has these reports, continues to deny irregularity or illegality.

41. It has been shown herein that Defendant did act illegally and pursued wrongful collection measures. Defendant has to prove that every illegal measure described by Plaintiff is authorized by law and is legal. If Defendant acknowledges even one violation to be illegal, unauthorized, reckless, etc., then Plaintiff wins her case.

## V.   DAMAGES

42. As a result of Defendant's actions, Plaintiff did sustain actual and economic damages.

43. According to 26 U.S.C. § 7433(b):

> In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of—
> (1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and
> (2) the costs of the action.

44. Plaintiff would ask this Court to multiply damages authorized under section 7433 by the number of violations committed by Defendant.

45. Marilyn Wallace is sole supporter of herself and main financial supporter of her husband. The illegal levy consisted of 55% of her pension and all of her social security benefit --- despite the fact that 26 USC §6331(h) states that a "levy shall attach up to 15 percent of any specified payment due..." First, the IRS levied what Plaintiff allegedly owed. Then, the IRS kept the levy for a lengthy period afterward. Such excessive and illegal levy caused financial hardship to Plaintiff and her family.

46. Plaintiff and her husband are elderly, unable to work. They live in an isolated area far from relatives and friends. To stop the seizure of her pensions, Plaintiff had to hire tax professionals to assist her. The extent and amount of the levy caused Plaintiff to suffer mental anguish, anxiety, and emotional distress. As a result, Plaintiff experienced new ailments, such as high blood pressure (Exhibit G and H).

47. According to Plaintiff's letter to her attorney (Exhibit H), Plaintiff says: "I am now almost 73 years old and I have wasted so much time of the past 12 years answering their mail that life has literally passed me by during that time. I estimate 2,000+ hours of my life wasted – equivalent of 250 eight-hour days of working in an office.... All the time wasted and money

taken represents countless lost opportunities. I wanted to become more proficient in music, but never did.... I never got the horse I wanted due to lack of money... My little sister was ill during most of this time. I wanted to take her to a clinic that might have helped her, but the money I would have used to do this was stolen from me. Too late now. She died in April of this year." How long will Defendant's harassment of Plaintiff continue and at what price?

48. Plaintiff clearly stated her cause of action: unauthorized and excessive levy of her retirement pensions. She has shown that illegal acts were committed against her. She has clearly listed the improper collection activities. She has proven that the IRS did not follow the prescribed methods of acquiring assets.

## VI.  CONCLUSION

49. The United States Congress has studied bureaucratic misconduct in governmental agencies, such as the IRS, and decided to take action. Congress passed many laws for a private right of action including the Unauthorized Tax Collection Act, 26 U.S.C. §7433. These "federal bounty hunter statutes" authorize statutory damages to give the bureaucracies incentive to obey the laws that Congress has passed. Further, the elected

representatives of the people want the courts to award maximum damages to give incentives to the people to file complaints in federal courts and to enforce the laws that Congress wants enforced.

50. Our elected representatives, after careful deliberation, have decided that the best remedy for the tendency of government agencies to make errors or actual wrongdoing is remedial litigation in the form of citizens' self-help statutes. For over 130 years, our Congress has passed many "Private Attorney General Statutes" authorizing private citizens to file suit in federal courts, and upon prevailing collect their fees and costs.

51. The "Bounty Hunter" Statutes soon followed and provided incentive for citizen action. Congress and the experts feel this is the best motivation for the federal agencies to obey the law.

52. The Unauthorized Tax Collection Act and its sister laws are part of the Taxpayer Bill of Rights II or the IRS Reform and Restructuring Act of 1998. These remedial statutes were passed after much research and study. The principle advisors to this and all legislation are the top authorities at the Department of Justice. No statute of this type would pass with the opposition of the Attorney General. The Unauthorized Tax Collection Act was supported and authorized by the legislative and executive branches of government.

53. If the Judiciary holds the IRS accountable, IRS supervisors would be motivated to better obey the law and supervise their employees. A large damage award would cause the IRS to stop pursuing certain illegal tactics and activities.

54. Plaintiff is entitled to maximum damages due to IRS illegal collection activities outlined herein.

55. The facts and the law show that Defendant did pursue illegal and improper collection activities.   Plaintiff's cause of action is proper. Defendant has not shown that the IRS is authorized to levy what it has levied and in the manner in which it pursued the levy.

56. In addition, the IRS levied Plaintiff's social security retirement benefit in the amount of $3,449.10. Further, they levied her husband's social security check for the joint tax returns for $3,074.09.

57. Such excessive and illegal levy caused emotional distress and financial hardship to Plaintiff and her family.

58. Such mistreatment of the citizen and waste of taxpayer dollars must be stopped. Strong action by one federal judge will cause Defendant to be more responsive to taxpayers and have more respect for citizens' suffering due to IRS wrongdoings. As we have shown and as this Court well knows, a remedy to this problem exists.

59. This Court should deny Defendant's motion to dismiss this case. Honorable Judge Urbina clearly stated that "the court easily concludes that the plaintiff has satisfied the pleading standards required to survive a motion to dismiss." [emphasis supplied]

60. This Court should grant Plaintiff damages, interest, attorneys fees and costs according to 26 U.S.C. §7433 and such other and further relief as the Court deems appropriate.

Respectfully submitted,

_Lynn Boak_
LYNN BOAK, ESQ.                                    Date: July 22, 2008

ELIAS AOUN, ESQ.

Please Note: Exhibits referred to in this Document have been previously filed and have not been attached.

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing

**Amended Complaint** has been served upon the following by electronic filing on

or about July 22, 2008:


KELLY H. RANKIN
United States Attorney
CAROL A. STATKUS
Assistant United States Attorney
2120 Capitol Avenue, Room 4002
Cheyenne, Wyoming 82001

ADAIR F. BOROUGHS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, DC 20044

Attorneys for the United States


LYNN BOAK, ESQ.

ELIAS AOUN, ESQ.