KELLY H. RANKIN
United States Attorney
CAROL A. STATKUS
Assistant United States Attorney
2120 Capitol Avenue, Room 4002
Cheyenne, Wyoming 82001

ADAIR F. BOROUGHS (*Pro Hac Vice*)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, DC 20044
Telephone:    (202) 305-7546
E-mail: adair.f.boroughs@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF WYOMING

| | | |
|---|---|---|
| MARILYN WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No.  2:08-CV-156-CAB |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.1(b)(2), the United States, through undersigned counsel, submits

the following memorandum in support of its motion for summary judgment.

## I.  UNDISPUTED FACTS

1.    For tax years 1994 through 2003, Plaintiff did not file timely tax returns because

she believes (1) that the Internal Revenue Service ("IRS") is not an agency of the United States

government, (2) that only government employees have to pay federal tax, (3) that the federal government does not have jurisdiction over people living in the fifty states, and (4) that the 16th Amendment to the Constitution was not properly ratified.  *See* Deposition Transcript of Marilyn Wallace ("Wallace Tr.") p. 12-13, 16-17, 65-66.

2.      Because Plaintiff did not file tax returns, the Internal Revenue Service ("IRS") made income tax assessments for these tax years pursuant to 26 U.S.C. § 6020(b).  Am. Compl. ¶ 4; Answer to Am. Comp. ¶ 4.  These tax liabilities, including assessments for penalties and interest, totaled $61,671.29 plus interest and accruals as allowed by law.  *See* Decl. of Adair Boroughs In Supp. of the United States Mot. for Summary Judgment ("Boroughs Decl."), Ex. C.

3.      The IRS also made civil penalty assessments for tax years 1985-1994.  These liabilities, including assessments for interest, totaled $7,183.67, plus interest and accruals as allowed by law.  *See* Boroughs Decl., Ex. B.

4.      In 2001, the IRS began levying Plaintiff's pension.  From September of 2001 through May of 2006, the State of Michigan Department of Management & Budget, Office of Retirement Services ("the Pension Office"), withheld $945.54 a month from Plaintiff's pension and paid this amount over to the IRS.  The IRS collected a total of $53,895.78 from its levy on Plaintiff's pension.  Am.Comp. ¶6; Answer to Am. Compl. ¶ 6.

5.      Between 2004 and 2006, Plaintiff filed tax returns for tax years 1994-2003.  Am. Compl. ¶7; Answer to Am. Compl. ¶ 7.

6.      On May 25, 2006, Plaintiff had a collection due process hearing before IRS Appeals Officer Thomas Bentley in Billings, Montana.  Am. Compl. ¶ 10; Answer to Am.

Compl. ¶ 10.  At this hearing, Officer Bentley determined that

> The taxpayers have [now] filed self-assessing returns.  Computer records reflect
> the account balances are being adjusted and it appears the adjustments [after
> made] will satisfy the remaining balances due and previous payment will result in
> an overpayment subject to refund statutes.

Boroughs Decl., Ex. D. at US 723.

7.      Officer Bentley terminated the levy on May 25, 2006, and later IRS sent Plaintiff

two refund checks totaling $10,954.18.  Am. Comp. ¶¶10, 12; Answer to Am. Comp. ¶¶ 10, 12.

8.      Plaintiff was aware that the IRS was levying $945.54 a month from her pension

from the start of the levy in September of 2001 and believed the levy was illegal at its inception.

Wallace Tr. at p. 31, 48, 79.  Plaintiff sent correspondence to the Pension Office and to the IRS

claiming that the levy was illegal in 2001.  Wallace Tr. at p. 39-41, 46-48, 52-53, Ex. 12, 13, 17;

Boroughs Decl., Ex. E at 12.

9.      Plaintiff kept a contemporaneous log of the payments the Pension Office made to

the IRS and knew exactly how much money the IRS had levied at any given time.  Wallace Tr. at

p. 57, 81-83, Exs. 31, 32.

10.      The Pension Office provided Plaintiff with forms to fill out to determine the

correct amount of her pension exempt from levy under statute.  Plaintiff did not fill out and

return these forms.  Wallace Tr. at p. 72-76, Exs. 27, 28.

11.      Plaintiff returned correspondence to the IRS unopened.  Wallace Tr. at p. 21-22,

24, Exs. 3, 5.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the movant demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

In this regard, Rule 56(e) of the Federal Rules of Civil Procedure provides that the nonmoving party "may not rest upon the mere allegations or denials" of his or her pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). This burden placed on the nonmoving party is not negligible; indeed, "[i]f the evidence [proffered by the nonmoving party] is merely colorable or is not significantly probative, summary judgment may be granted." *Id*. Conclusory allegations unsupported by specific factual data are insufficient to create a triable issue of fact so as to preclude summary judgment. *See L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000); *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If the nonmoving party cannot produce sufficient evidence to demonstrate that a triable

4

issue of fact exists, the moving party is entitled to summary judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III.  PLAINTIFF'S ACTION IS BARRED BY THE STATUE OF LIMITATIONS

The United States is immune from suit except when it consents to be sued and "the terms of its consent…define [the] court's jurisdiction to entertain the suit." *United States v. Dalm*, 494 U.S. 596, 608 (1990); *United States v. Nordic Vilage, Inc.*, 503 U.S. 30, 33 (1992).  "A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms."  *Dalm*, 494 U.S. at 608; *see also Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 637 (5th Cir. 2003)(holding the statute of limitations defense is not waivable because "[i]t is well established that, if a waiver of sovereign immunity contains a limitations period, a plaintiff's failure to file his action within that period deprives the court of jurisdiction."); *Overton v. United States,* 202 F.3d 282 (10th Cir. 2000)(table) at *2 ("Because the 'time-bar qualifies [as] a waiver of sovereign immunity,' it is jurisdictional in nature.")(quoting *Dahn v. United States,* 127 F.3d 1249, 1252 (10th Cir. 1997)).

Section 7433 clearly states that an action brought pursuant to this section must be brought within two years after the date the right of action accrues.  *See* 26 U.S.C.  7433(d)(3).  The right of action accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action."  26 C.F.R.  301.7433-1(g)(2); *Stjernholm v. Peterson*, 85 F.3d 641, 1996 WL 238926 (10th Cir. 1996)(table) at *2.  "[I]gnorance of the law does not toll a statute of limitations" as parties are charged with knowledge of the law.  *Shipley v. IRS*, No. 05-3272, 2006 WL 497720 (10th Cir. Mar. 2, 2006) at *1 (citing *Venture Coal Sales Co. v. United*

*States*, 370 F.3d 1102, 1107 (Fed. Cir.), *cert. denied*, 543 U.S. 1020 (2004)).  Thus, the statute of

limitations begins running once "an injured party knows or should know the critical *facts* related

to his claim." *Dziura v. United States*, 168 F.3d 581, 583 (1st Cir. 1999)(emphasis added).

      Cases interpreting Section 7433 and Treas. Reg. § 301.7433-1(g)(2) have held that a right

of action accrues under the statute when the collection action begins.  *Synder v. Comm'r*, No. 97-

2929, 1998 WL 796768 (D.D.C. Oct. 6, 1998) at *1; *see also Shipley*, 2006 WL 497720 at *1

("Ordinarily, a right of action accrues when the levy commences…when the IRS made its first

allegedly wrongful seizure of [plaintiff's] social security check."); *Simmons v. United States*, 875

F. Supp. 318, 320 (W.D.N.C. 1994)("The parties do not dispute that the property was levied on

December 19, 1990…This cause of action accrued when a collection action began."); *Santoro v.

United States*, No. 07-301, 2008 WL 2130423 (E.D.Tex. 2008) at *3 ("[T]he Court looks to the

date of the collection activity to see whether the claim was timely brought*."); *Gandy v. United

States*, No. 02-124, 2005 WL 1324706 (E.D.Tex. 2005) at *7 (running the statute from the date

the Notice of Federal Tax Lien was filed); *Eastman v. United States*, No. 06-1069, 2008 WL

899252 at *4 (W.D.Ark. Mar. 31, 2008)(same).  Thus, to the extent that Plaintiff claims the IRS

levy on her pension was illegal from its inception (*see* Am. Comp. at ¶¶ 6, 21-26, 32-41; Wallace

Tr. at p. 31, 48, 79), her right of action accrued on September 25, 2001, when the levy began.

      In a case directly on point, *United States v. Marsh*, the IRS began levying all but $1 of the

taxpayer's pension in January of 1997, and the taxpayer filed a counterclaim against the United

States in July of 1999 claiming the levy was improper.  89 F.Supp.2d 1171(D. Haw. 2000).  The

court held that the action was time-barred because the statute of limitations had run, stating that:

> [T]he Retirement System remitted $1188 to the IRS twice a month.  At the same
> time, the Retirement System sent [the taxpayer] the remaining one dollar that had
> not been levied by the IRS.  From this repeated semi- monthly payment of only
> one dollar directly to him, [the taxpayer] knew well before July 1997 that the
> Retirement System was continually remitting $1188 semi-monthly to the IRS.
> Accordingly, [the taxpayer]'s allegation…is time barred.

*Id*. at 1176.  Similarly, the Court in *Bright v. United States* held that "once Plaintiff learned…that

his salary was being levied, he knew or should have known that the IRS had not provided him

with the required notice of intent to levy."[1]  446 F. Supp. 2d 339, 345 (E.D. Pa. 2006).

Plaintiff readily admits that she had actual notice of the IRS levy.  *See* Wallace Tr. at p.

31, 48, 79.  Plaintiff believed the levy to be improper from its inception in 2001, expressed this

view to the IRS and the Pension Office repeatedly, and readily admits that she could have filed

this suit in 2001, had she chosen to do so.  *See id*. at p. 31, 39-41, 47-48, 52-53, 79, Ex. 12, 13,

17, 20.  Thus, Plaintiff not only had a "reasonable opportunity to discover the facts supporting a

possible cause of action for improper levy, but had actual notice of the IRS levy…Thus, his

challenge to the levy is untimely and must be dismissed."  *Hynard v. IRS*, 233 F. Supp. 2d 502,

510 (S.D.N.Y. 2002).

To the extent that Plaintiff claims the levy should have ended after the payment of

$10,580 (*see* Am. Comp. ¶7; Pl. Resp. To Interrogatory No. 4), her right of action accrued on

August 23, 2002, the date that the IRS had collected $10,580.  Plaintiff kept a contemporaneous

log of the payments her pension office made to the IRS and knew the day that more than $10,580

---

[1] The only Section 7433 case that counsel can find where the Court ran the statute of limitations from a
date other than the date when the IRS collection action began is *Claitor v. United States,* No. 97-20524,
1999 WL 675337 (N.D.Cal. July 29, 1999).  In this case the Court acknowledged that Plaintiff had
learned of all the facts related to his claim at an earlier date but declined to run the statute of limitations
from this date, expressly disagreeing with the First Circuit, because an "injustice…would result from its
application."  *Id.* at *4.  The Court applied the continuous tort doctrine, addressed below.  *See id.*

had been collected.  *See* Wallace Tr. at p. 57, 81-83, Exs. 31, 32.  Thus, Plaintiff's claim that the

IRS should have stopped the levy after $10,580 had been collected is also time-barred as the

statute ran on August 23, 2004.  As the latest statute ran in 2004, all of Plaintiff's claims are

time-barred by the statute of limitations and the court lacks jurisdiction over them.

  In ruling on the United States' Motion to Dismiss in this case, the District Court for the

District of Columbia briefly looked at the statute of limitations question without the privilege of

briefing and ran the statute from the date that the levy ended.[2]  *See* Mem. Op. (Docket No. 13) at

7.  However, the Court did not make a determination as to when the "taxpayer...had a reasonable

opportunity to discover all essential elements of a possible cause of action" as required by 26

C.F.R. §301.7433-1(g)(2).  Instead, the Court based its decision on an unpublished Northern

District of California case applying the continuing tort doctrine and a D.C. Circuit Court opinion

explaining this doctrine in an action brought pursuant to the Federal Tort Claims Act, *Page v.*

*United States*, 729 F.2d 818, 821 (D.C.Cir. 1984).  *See* Mem. Op. (Docket No. 13) at 7.

---

[2] Orders denying motions to dismiss are not "final decisions" because such orders "ensure [] that litigation will continue in the District Court." *Lauro Lines v. Chasser*, 490 U.S. 495, 498 (1989)(internal citations and quotes omitted).  The District Court has "general discretionary authority to review and revise [such] interlocutory rulings prior to entry of final judgement." *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991)(holding that the district court's partial summary judgment was such an interlocutory ruling); *see also Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)(noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"); *Rodriguez v. Tenn Laborers Heath & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004)("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."); *Schoen v. Washington Post*, 246 F.2d 670, 673 (D.C.Cir. 1957)([W]here the interests of justice require it, [the district] court has plenary powers to set aside or otherwise modify its interlocutory orders at any time before final judgment."). *Accord, Holly D. v. Cal. Inst. Of Tech*., 339 F.3d 1158, 1180 (9th Cir. 2003); *High Country Arts and Craft Guild v. Hartford Fire Ins. Co*, 126 F.3d 629, 635 (4th Cir. 1997).  Law of the case doctrine "is not an 'inexorable command,' but is to be applied with good sense.  When a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set it self right to avoid subsequent reversal." *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).

Whether the Court's decision was correct or not under the case law of the D.C. Circuit[3], it is clearly not in accord with Tenth Circuit law, as explained below.  In an action involving a federal question where venue has been transferred pursuant to 28 U.S.C. § 1406, the transferee court applies its circuit's interpretation of federal law, not the interpretation of the circuit where the transferor court is located.  *Newton v. Thomason*, F.3d 1455, 1460 (9th Cir. 1994); *Tel-Phonic Serv., Inc. v. TBS Int'l, Inc.* (5th Cir. 1992).  Thus, this Court must apply Tenth Circuit law when determining whether the continuing tort doctrine applies in this case.

In the Tenth Circuit, the continuing tort doctrine does not apply when the injury is "definite and discoverable, and nothing prevented plaintiff from coming forward to seek redress." *Matson v. Burlington North. Santa Fe R.R.*, 240 F.3d 1233 (10th Cir. 2001); *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996); *see also United States v. Hess*, 194, F.3d 1164, 1176 (10th Cir. 1999)(holding that the continuing tort doctrine inapplicable when the United States should have reasonably known of the injury, noting the doctrine was applied in cases where "parties...fraudulently concealed their conduct so the plaintiffs were prevented from timely coming forward to seek redress.").  *Accord Dziura v. United States*, 168 F.3d 581, 583 (1st Cir.

---

[3] The Supreme Court has held that the doctrine of equitable tolling of a statute of limitations may be applied in suits against the federal government, but has recognized such tolling only "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95-96 (1990); *see also United States v. Beggerly,* 524 U.S. 38, 48-49 (1998)(holding that equitable tolling doctrine does not apply to the Quiet Title Act because the act "by providing that the statute of limitations will not begin to run until the plaintiff 'knew or should have known of the claim of the United States,' has already effectively allowed for equitable tolling."); *United States v. Brockamp*, 519 U.S. 347 (1997)(holding that the equitable tolling doctrine does not apply to 26 U.S.C. § 6511, noting that "[t]o read an 'equitable tolling' exception into § 6511 could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for 'equitable tolling.'").

1999)(rejecting continuing violation theory in a Section 7433 case stating that "absent a disability or other impediment to suit, the applicable limitation period ordinarily will begin to run when an injured party knows or should know the critical facts related to his claim."); *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1992).

Here Plaintiff's alleged injury—a wrongful or improper levy—was "definite and discoverable."  She knew exactly how much money had been levied by the IRS and kept track of the amounts to the penny.  Wallace Tr. at p. 57, 81-82, Exs. 31-32.  Nothing prevented Plaintiff from filing suit in 2001, as Plaintiff readily admits.  *See id*. at 79.  Plaintiff makes no allegations that the IRS attempted to conceal that the levy was ongoing or otherwise impede her ability to file suit.  *See generally* Am. Compl.  Thus, under Tenth Circuit law, the continuing tort doctrine does not apply because the Plaintiff's alleged injury was "definite and discoverable, and nothing prevented plaintiff from coming forward to seek redress."  *Matson v. Burlington North. Santa Fe R.R.*, 240 F.3d 1233 (10th Cir. 2001); *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996).

## IV.  PLAINTIFF'S CLAIMS REGARDING FEDERAL TAX ASSESSMENTS SHOULD BE DISMISSED

The United States cannot be sued except in strict accordance with the terms of a specific waiver of sovereign immunity granted by Congress.  *United States v. Nordic Vilage, Inc.*, 503 U.S. 30, 33 (1992); *United States v. Dalm*, 494 U.S. 596 608 (1990).  Waivers of sovereign immunity should be narrowly construed in favor of the United States and may not be enlarged beyond the waiver expressly stated in the statute.  *Nordic Village*, 503 U.S. at 34, 37; *Arnett v. United States*, 910 F. Supp. 515, 518 (D. Kan. 1995).  This action is brought pursuant to 26 U.S.C. § 7433.  Am. Compl. at ¶16, 18.  Section 7433 provides a limited waiver of sovereign

immunity from suits for damages if an officer or employee of the Internal Revenue Service

("IRS") "recklessly or intentionally, or by reason of negligence, disregards" any provision of the

Internal Revenue Code or Treasury Regulations "in connection with the *collection* of any federal

tax." 26 U.S.C. 7433 (emphasis added). "[S]ection 7433's waiver to the government's

sovereign immunity must be read narrowly." *Allied/Royal Parking L.P. v. United States*, 166

F.3d 1000, 1003 (9th Cir. 1999).

Section 7433 provides for an action only in connection with the collection of federal tax,

not in connection with the determination or assessment of federal tax. *Gass v. United States*

*Dept. of Treas.*, 216 F.3d 1087 (10th Cir. 2000)(table), 2000 WL 743671 at *2-3; *Hudson Valley*

*Black Press v. IRS,* 409 F.3d 106, 112-13 (2d Cir. 2005); *Judicial Watch, Inc. v. Rossotti*, 317

F.3d 401, 411 (4th Cir. 2003); *Shreiber v. Mastrogiovanna*, 214 F.3d 148, 152 (3d. 2000); *Miller*

*v. United States*, 66 F.3d 220, 222-23 (9th Cir. 1995), *cert. denied* 517 U.S. 1103 (1996); *Shaw v.*

*United States*, 20 F.3d 182, 184 (5th Cir. 1994), *cert. denied*, 513 U.S. 1041 (1994); *Gonsalves v.*

*United States*, 975 F.2d 13, 16 (1st Cir. 1992); *Amoco Prod. Co. v. Aspen Group*, 59 F. Supp. 2d

1112, (D. Colo. 1999); *Arnett*, 910 F. Supp. at 518; H.R. CONF. REP. NO. 100-1104 (1988), *as*

*reprinted in* 1998 U.S.C.C.A.N. 5048, 4289; *see also Quinn v. United States*, 94 Fed. Appx. 740,

741(10th Cir. 2004)(upholding district court's dismissal of Plaintiff's complaint because it "does

not allege any acts which would support a claim of reckless or intentional disregard of tax code

provisions by [IRS] employees *in the course of collecting taxes*.")(emphasis added). Thus, in an

action pursuant to Section 7433, a taxpayer cannot challenge the amount of the assessments

against her or claim that she does not owe them. *See Gonsalves*, 975 F.2d  at 16 (A claim under

Section 7433 "was not intended to supplement or supersede, or to allow taxpayers to circumvent" the proper procedures for challenging the amount of assessments under Section 7422.); *Evans-Hoke v. Paulson*, 503 F. Supp. 2d 83, 86 (D.D.C. 2007)("Taxpayers can challenge the validity of a tax assessment…in a district court only after paying the disputed tax and then filing an administrative claim for refund or credit with the Secretary of the Treasury.  26 U.S.C. § 7422(a)."); *see also Hudson Valley*, 409 F.3d at 112-13 (describing the legislative history of section 7433 "which establishes that the failure of Congress to include a damages action for tax assessment activities was not inadvertent").

Thus, any of Plaintiff's claims regarding the amount or validity of the assessments against her must be dismissed as the Court lacks subject matters jurisdiction to hear them.[4] *Gass,* 216 F.3d 1087 (table), 2000 WL 743671 at *2; *Buaiz v. United States*, 471 F. Supp. 2d 129, 136 (D.D.C. 2007).  Paragraphs 23-24 of Plaintiff's Amended Complaint, labeled "IRS violation no. 2" must be dismissed on these grounds.  In these paragraphs, Plaintiff claims that the assessment of a $500 penalty was "illegal" for some unspecified number of years between 1985-1993.  This claim is obviously one challenging the assessment of a tax, not its method of collection.  Similarly, paragraphs 34-35, 37-40, are claims that assessments are incorrect, not claims regarding collection.[5]

---

[4] Plaintiff acknowledges this limit on jurisdiction in her complaint before she later goes on to allege claims related to assessments.  *See* Am. Compl. at ¶ 19 ("To win her case, Plaintiff must demonstrate that the IRS did not follow the prescribed methods of acquiring assets.")

[5] Plaintiff claims that assessments against her for tax year 1994 must be incorrect because allegedly contradictory assessments exist.  *See* Am. Compl. at ¶¶ 34-40.  Plaintiff, however, fails to understand that one of the Certificate of Assessments, Payments and other Specified Matters (Form 4340) is explicitly for a $500 "Civil Penalty" while the other is explicitly "for U.S. Individual Income Tax Return (Form 1040)."   *See* Boroughs Decl., Exs. B, C.

The burden is squarely on the plaintiff to establish that a particular waiver of sovereign immunity covers his suit, and that she has satisfied all of the jurisdictional prerequisites imposed. *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986). As Plaintiff has failed to allege a waiver of sovereign immunity that covers her claims in Paragraphs 23-24, 34-35, and 37-40 of Plaintiff's Amended Complaint, these claims must be dismissed for lack of subject matter jurisdiction. *See Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008)(citing *James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992))("the party asserting jurisdiction bears the burden of proving sovereign immunity has been waived.").

## V. PLAINTIFF'S CLAIMS NOT MADE IN HER ADMINISTRATIVE CLAIM TO THE INTERNAL REVENUE SERVICE SHOULD BE DISMISSED

As explained above, "section 7433's waiver to the government's sovereign immunity must be read narrowly." *Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1003 (9th Cir. 1999). Section 7433(d)(1) expressly states that a Plaintiff cannot recover for wrongful collection under 26 U.S.C. § 7433 unless she has exhausted her administrative remedies. In order to show a waiver of sovereign immunity under 26 U.S.C. § 7433, a plaintiff must show that "[a]n administrative claim [was] filed in accordance with Treas. Reg. 301.7433-1(e)." *Neiwald v. IRS*, 73 F.3d 373 (10th Cir. 1996)(table), 1996 WL 5551 at *1. As an initial matter, the administrative claim attached to Plaintiff's original complaint did not meet all of the requirements of 26 C.F.R. 301.7433-1(e).[6] Most notably, the administrative claim did not contain the signature of the taxpayer. 26 C.F.R. 301.7433-1(e)(v).

---

[6] Plaintiff did not appear to attach a copy of the administrative claim to her Complaint filed with the Court or to her Amended Complaint. *See* Docket Nos. 1, 26. However, Plaintiff did attach a copy of her administrative claim to the original Complaint served on the government. This administrative claim, attached to Boroughs Declaration as Exhibit F, is the one to which the United States refers.

13

Nor does Plaintiff's administrative claim contain "any available substantiating documentation or correspondence with the Internal Revenue Service" related to the grounds for the claim or "any available substantiating documentation or evidence" related to the taxpayer's claim as required by the regulations.  *See* 26 C.F.R. 301.7433-1(e)(iii)-(iv).  Plaintiff submitted a two-page claim with no substantiating documentation.  *See* Boroughs Decl., Ex. F.  "The regulations…make clear that the taxpayer should include any supporting documentation, evidence and correspondence with the IRS."  *Hallinan v. United States*, 498 F. Supp. 2d 315, 317-18 (D.D.C. 2007).  As Plaintiff failed to follow the "specific administrative procedures set forth under the regulations," she has failed to exhaust her administrative remedies and has failed to "preserve a claim for damages."  *Bullard v. United States*, 486 F. Supp. 2d 512, 518 (D.Md. 2007); *see also Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 299 (1945)("The protection of the revenue authorizes the [IRS] to demand information in a particular form, and [it] is entitled to insist that the form be observed so as to advise [it] expeditiously and accurately of the true nature of the claim.").

Even if the Court holds that Plaintiff has done enough at the administrative level to preserve some claim for damages, Plaintiff cannot recover on any factual or legal grounds not raised specifically raised in her administrative claim.  *See Southwestern Life Ins. Co. v. United States*, 560 F.2d 627, 631 (5th Cir. 1977)(citing *United States v. Felt & Tarrant Man. Co.*, 283 U.S. 269 (1931); *Angelus Milling Co. v. Comm'r*, 325 U.S. 293 (1945))("The Supreme Court has long since held that a failure to raise factual and legal grounds in [an administrative] claim for refund bars a recovery on such a claim in a subsequently filed suit.")

14

Treasury Regulation 301.7433-1(e) requires, among other things, that Plaintiff state "the grounds, in reasonable detail, for the claim." 26 C.F.R. 301.7433-1(e)(ii).  Thus, sovereign immunity has been waived only as to any claim set forth in Plaintiff's administrative claim.  *See True v. United States*, 190 F.3d 1165, 1171 (10th Cir. 1999)("[I]f the taxpayer does not adequately raise an issue at the administrative level, the courts have no jurisdiction to consider the issue in a later suit."); *Herrington v. United States*, 416 F.2d 1029, 1032 (10th Cir. 1969)(A "ground relied on in a suit…must be reasonably encompassed by those set out in the claim.").

While the case law explaining this limitation of jurisdiction usually arises in the context of a refund suit (*see, e.g., Herrington*, 416 F.2d at 1032), it has been applied in the context of Section 7433.  *See, e.g., Byrd v. United States*, No. 9406119, 1996 WL 196705, (W.D. Ark. Feb. 22, 1996) at *3 (Plaintiff "didn't specifically contend in his administrative claim that failure to release the lien against him would amount to a collection error cognizable under Section 7433. Accordingly, defendant is correct that such alleged failure cannot now be properly raised due to the 'exhaustion of administrative remedies' requirement.").  Congress's purposes in requiring taxpayers to exhaust administrative remedies are the same in both the refund and Section 7433 contexts.  *See Angle v. United States*, 966 F.2d 252, 254 (10th Cir. 1993)("The purpose of such a requirement, as the cases and regulation indicate, is to provide the IRS with adequate information to consider and dispose of the claims without the need for litigation, and thus to avoid surprise."); *True*, 190 F.3d at 1172 (quoting *Stelco Holding Co. v. United States*, 42 Fed. Cl. 101, 108 (1998))("[T]hese requirements serve to apprise the Internal Revenue Service of the nature of the claim and its underlying facts, so that it can make a thorough administrative investigation and

15

determination, correct any errors, and 'limit the scope of any ensuing litigation to those issues

which have been examined and which [it] is willing to defend.'" ); *Herrington*, 416 F.2d at 1032

("The manifest purpose of the requirement is to afford the Service an opportunity to consider and

dispose of the claim without the expense and time which would be consumed if every claim had

to be litigated."); *Freese v. United States*, 455 F.2d 1146, 1153 (10th Cir. 1972)("The purpose of

requiring that there be a fair presentation of the claim to the Internal Revenue Service is to avoid

surprises.").

  Thus, "plaintiff has the burden of bringing his claim to the attention of the government."

*Fullmer v. United States*, No. 93-CV-0120, 1993 WL 534221 (D. Wyo. 1993) at *2 (citing

*Herrington v. United States*, 416 F. 2d 1029, 1032 (10th Cir. 1969)).  "[I]t is not enough that

somewhere under the [IRS] Commissioner's roof is the information which might enable him to

pass on a claim." *Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 299 (1945).  Instead, "the

taxpayer must advance in the administrative proceeding any contention it wishes to pursue in

court," (*Apollo Fuel Oil v. United States*, 195 F.3d 74, 77 (2d. Cir. 1999)), and is barred from

recovery on any ground "not clearly and specifically set forth" in her administrative claim.

*Brown v. United States*, 890 F.2d 1329, 1346 (5th Cir. 1989).

  In her administrative claim, Plaintiff sets forth three grounds for her claim under Section

7433:

1. "IRS unlawfully collected under notice of levy for tax year 1994-2003 the amount of
$53,89.78 from my retirement benefit...Approximately $10,000 of that was the amount claimant
owed for past due taxes, interest and penalties. The rest was expensive levies"[7]

---

[7] Section 7433 does not waive sovereign immunity for a claim of improper assessment.  *See* Part IV,
*supra*.  Thus, Plaintiff cannot claim she did not owe the amount of the assessments made by the IRS.

Boroughs Decl. Ex. F, at 1, ¶ 2A.

2. "[T]he IRS completed tax returns for me (SFR) whereby they did not give me credit for my deductions, expenses, etc. and fabricated immense figures for taxable income…The IRS seized from my pension fund…[t]he amounts which the SFR showed I owed that was incorrect, but corrected by my admitted returns."[8]
Boroughs Decl. Ex. F, at 1 at 1-2 ¶ 2D.

3. "[T]he amount of the levy was in excess of the amount that the IRS records show was owed by claimant…The IRS seized from my pension fund…[t]he excess amount of money taken from my pension funds which the IRS never claimed that I owed anyway." [9]
Boroughs Decl. Ex. F, at 1-2 ¶¶ 2C, 2D.

Because no other grounds for relief were claimed at the administrative level, this Court

lacks jurisdiction over any claims not "reasonably encompassed" by these three grounds.

*Herrington v. United States*, 416 F.2d 1029 (10th Cir. 1969); *see also True v. United States*, 190

F.3d 1165, 1172-73 (10th Cir. 1999)(holding that a ground for relief cannot be raised in a suit if it

is "independent" of those raised in the administrative claim).

In short, in her administrative claim, Plaintiff claimed the IRS collected more money than

she owed and more than was reflected on the Notice of Levy that she has in her possession.[10]  *See*

Boroughs Decl., Ex. F.  She raised no claims as to notice requirements (Am. Compl. ¶¶ 25-26),

no claims regarding the percentage of her pension being levied (Am. Compl. ¶¶ 21-22), no

claims regarding the assessment of penalties (Am. Compl. ¶¶23-34), no claims that the levy

should have been released on the later date of October 31, 2005 (Am. Compl. ¶¶ 27-28), no

---

[8] Section 7433 does not waive sovereign immunity for a claim based on erroneous assessment of tax.  *See* Part IV, *supra*.  Thus, this claim is not cognizable under Section 7433.

[9] Again, Plaintiff is claiming that she owed less than $53,895.78 in taxes.  However, the Certificates of Assessment, Payments and Other Specified Matters (Forms 4340) clearly show assessments in excess of $69,000 at the time the levy was in place.  Plaintiff cannot challenge these assessments in an action (or administrative claim) brought pursuant to Section 7433.  *See* Part IV, *supra*.

[10] It should also be noted that Plaintiff later provided the United States with a second notice of levy that she received from her pension office.  *See* Boroughs Decl., Ex. G.

claims regarding Plaintiff's hearing in front of IRS Appeals Officer Bentley (Am. Compl. ¶¶ 10, 29), no claims regarding Plaintiff's refund checks (Am. Compl. ¶¶ 12-13, 31), no claims regarding a lien on Plaintiff's husband (Am. Compl. ¶¶ 32-33), no claims regarding assessment dates (Am. Compl. ¶36) and no claims as to contradictory assessments (Am. Comp. ¶¶ 34-41) in her administrative claim.[11]   *See* Boroughs Decl. Ex. F.  Thus, the claims contained in Paragraphs 12-13 and 21-41 must be dismissed for lack of subject matter jurisdiction, as Plaintiff failed to raise any of these claims in her administrative claim.

## VI.  THE UNITED STATES IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL OF PLAINTIFF'S CLAIMS

### A.  Claimed Violation of 26 U.S.C. § 6331(h)

Plaintiff alleges the IRS violated 26 U.S.C. § 6331(h) by levying more than fifteen percent of her pension.  *See* Am. Compl. at ¶¶ 21-22. Section 6331(h) limits IRS levies on "specified payments" to fifteen percent (15%).  *See* 26 U.S.C. § 6331(h)(1).  Plaintiff claims, and the United States admits that the IRS levy on Plaintiff's pension was more than fifteen percent. *See* Am. Compl. ¶ 6; Answer to Am. Comp. ¶ 6.  However, only $558.33 of Plaintiff's monthly pension checks were a "specified payment" within the meaning of 26 U.S.C. § 6331(h), and thus the amounts levied by the IRS is not a violation of the statute.  *See* 26 U.S.C. § 6331(h)(2).

Section 6331(h) defines the term specified payment as:

(A) any Federal payment other than a payment for which eligibility is based on the income or assets (or both) of a payee,
(B) any payment described in paragraph (4), (7), (9), or (11) of section 6334(a), and
(C) any annuity or pension payment under the Railroad Retirement Act or benefit

---

[11] Again, a number of Plaintiff's claims are regarding assessments and are, thus, not cognizable.  *See* Part IV, *supra.*

under the Railroad Unemployment Insurance Act.

26 U.S.C. § 6331(h)(2).

Plaintiff's pension is from the State of Michigan.  *See* Am. Comp. ¶ 6.  Thus, it is not a

federal payment and does not fall within 26 U.S.C. § 6331(a)(1)(A).  Similarly, Plaintiff's

pension is not a payment under the Railroad Retirement Act or benefit under the Railroad

Unemployment Insurance Act, nor does Plaintiff make any claims that it is.  *See generally* Am.

Compl.  Thus, it does not fall within 26 U.S.C. § 6331(a)(1)(C).  Plaintiff's pension is not an

unemployment benefit,  worker's compensation benefit, or a public assistance payment, nor does

Plaintiff make any claims that it is (*see generally* Am. Compl.), and thus, is not a payment

described in paragraph (4), (7), or (11) of Section 6334(a).

Thus, the only question is how much of Plaintiff's pension falls in to paragraph (9) of

Section 6334(a) which provides a minimum exemption for wages, salary and other income.

Section 6334(a)(9) defines this minimum exemption as:

> Any amount payable to or received by an individual as wages or salary for
> personal services, or as income derived from other sources, during any period *to
> the extent that the total of such amounts* payable to or received by him during such
> period *does not exceed the applicable exempt amount* determined under
> subsection (d).

26 U.S.C. § 6334(a)(9)(emphasis added).  The exempt amount is the sum of the standard

deduction and the deductions allowed to the taxpayer for personal exemptions divided by the

number of pay periods in a year.  *See* 26 U.S.C. § 6334(d)(2)-(3); 26 C.F.R. 301.6334-3.  If the

taxpayer does not submit to her employer "a written and properly verified statement...specifying

the facts necessary to determine the proper [exemption amount]," the exemption amount is

determined as if the taxpayer is a "married individual filing a separate return with only 1 personal exemption."  26 C.F.R. 301.6334-3(c); *see also* 26 C.F.R. 301.6334-4.

The Michigan retirement office provided Plaintiff with the forms where she could state her filing status, list any additional standard deduction and list any exemptions.  *See* Wallace Tr. at p. 73-76, Exs. 27, 28.  She did not return these forms to the Michigan pension office.  *See* Wallace Tr. at p. 73-76.  Thus, the Pension Office properly calculated her exempt amount (as if she were married filing a separate return with one personal exemption) at $558.33 each month.[12] *See* Wallace Tr., Ex. 31 at 1.  Plaintiff does not allege any facts suggesting this exempt amount was improperly calculated.  *See generally* Am. Compl.

Thus, under 26 U.S.C. § 6331(h), the IRS was allowed to levy fifteen percent (15%) of Plaintiff's wages up to the minimum exempt amount and one-hundred percent (100%) of Plaintiff's wages beyond the exempt amount.  *See* 26 U.S.C. § 6331(h).  In other words, the IRS was allowed to levy all but $474.58[13] of Plaintiff's pension check.  Plaintiff never received less than $558.33 from her pension check.  *See* Wallace Tr., Ex. 31.  Thus, as a matter of law, the IRS levy on Plaintiff's pension did not violate 26 U.S.C. § 6331(h).[14]

---

[12]The standard deduction for 2001 for a married individual filing separate was $3,800 and the personal exemption amount for 2001 was $2,900.  Thus, the exempt amount of Plaintiff's monthly pension check was ($3,800 + $2,900)/12 = $558.33.

     For a continuing levy that spans more than one year, the standard deduction amount, personal exemption amount and filing status are based on the year the original notice of levy was served, unless the taxpayer provides an updated statement.  26 C.F.R. § 301.6334-3(e).  As Plaintiff never filed a statement, the exempt amount remains the same throughout the duration of the levy.

[13] $558.33 * 85% = $474.58

[14]Plaintiff also alleges in her Amended Complaint that "Section 6331 does not show that a levy could extend to Plaintiff's retirement pension benefit, and Defendant has not shown any provision of the Code to prove that it could."  Am. Compl. ¶22.  But the burden is on Plaintiff to show a levy on Plaintiff's retirement account is a violation of a the Internal Revenue Code or regulation.  *Overton v. United States*, 202 F.3d 282, 2000 WL 14274 (10th Cir. 2000)(table) at *4.  "Here...plaintiff has not shown that seizure of a retirement account violates a tax statute or regulation.  In fact, as a matter of law, retirement funds

In denying the United States' Motion to Dismiss in this case, the United States District Court for the District of Columbia held that Plaintiff had stated a claim because she alleged that "the levy withdrew fifty-five percent of her pension each month" and that such an amount "exceeds the statutory maximum of fifteen percent" in 26 U.S.C. § 6331(h). *See* Mem. Op. (Docket No. 13) at 8. The Court did not have the privilege of briefing on 26 U.S.C. § 6331(h) and made this statement in a conclusory fashion without examination of the statute or considering what payments constituted "statutory payments" under the statute. *See id.* The Court's statement is clearly erroneous, as explained above.

## B. Claims Where No Violation of the Internal Revenue Code or Treasury Regulations Are Alleged.

Section 7433 provides a cause of action against the United States if an officer or employee of the IRS "recklessly or intentionally, or by reason of negligence disregards any provision of [the Internal Revenue Code], or any regulation promulgated" thereunder. 26 U.S.C. § 7433(a). Therefore, in order to state a claim under Section 7433, a Plaintiff must "specifically plead the exact provisions of the statute or regulations which they allege were intentionally, recklessly or negligently disregarded." *Gardener v. IRS*, No. 99-1176, 2000 WL 34327006, (D.N.M. Dec. 14, 2000) at *5; *see also Rosson v. United States*, 127 Fed. Appx. 398, 401 (10th Cir. 2005)("The Rossons have not alleged any violation of the Revenue Code or Regulations...Therefore, this claim was properly dismissed."); *Overton v. United States*, 202 F.3d 282 (10th Cir. 2000)(table) at *4 ("[P]laintiff has not shown that [the IRS' actions] violates a tax statute or regulation."); *Quinn v. United States*, No. 03-192, 2003 WL 22133715 (W.D. Okla.

---

are not exempt from levy. *See* 26 U.S.C. § 6334(a), (c). Summary judgment was appropriate, therefore [on this count]." *Id.*

July 10, 2003) at *5, *aff'd Quinn v. United States*, 94 Fed. Appx. 740 (10th Cir. 2004), ("[T]he

Complaint and its attachments do not clearly identify the statutes which such individuals are

alleged to have 'disregarded' in violation of Section 7433.); *Snyder v. IRS*, No. 97-2929, 1998

WL 796768 (D.D.C. Oct. 6, 1998) at *2 (holding that the Amended Complaint did not meet the

requirement of Fed. R. Civ. P. 8(a)(2) because it "does not identify a specific statute or regulation

that the IRS disregarded."); *Photographic Assistance Corp. v. United States*, No. 97-3561, 1999

WL 675343 (N.D. Ga. July 14, 1999) at *3 ("Plaintiff failed to assert what provision or

regulation of the Internal Revenue Code was either recklessly or intentionally disregarded by the

IRS.").

　　　　Plaintiff acknowledges that she must show that the IRS acted negligently in violation of

the Internal Revenue Code (*see* Am. Compl. at ¶ 19), declares that she will "present the Court

with more than one IRS violation" (Am. Compl. at ¶ 20), and goes on to label the subsequent

paragraphs of her Amended Complaint as IRS violations 1-18.  *See* Am. Compl. at ¶¶ 21-31.

However, the paragraphs labeled IRS violation no. 2, 17 and 18, as well as paragraphs labeled

"Reckless, intentional or negligent discrepancies for years 1985 to 1993" and "Reckless,

intentional or negligent discrepancies for tax year 1994" fail to allege any violation of the Internal

Revenue Code or Treasury Regulations.  *See* Am. Compl. ¶¶ 23-24, 29-41.  Thus, these claims

must fail as a matter of law.

## C.  Claims Where Facts Alleged Do Not Violate Statute Cited.

　　　　While other paragraphs of Plaintiff's complaint cite to statutes, the facts alleged do not

violate the statutes cited.  Such allegations must fail as a matter of law.  *See Quinn v. United*

*States*, 94 Fed. Appx. 740, 741 (10ᵗʰ Cir. 2004)(upholding dismissal of 7433 claim because the "amended complaint does not allege any acts which would support a claim of reckless or intentional disregard of tax code provisions by [IRS] employees."); *Quinn*, 2003 WL 22133715 at *5 ("Although some of the statutes and regulations cited by the Plaintiff relate to the imposition and release of tax levies, the Plaintiff has not alleged*, in a coherent manner, facts showing that IRS agents intentionally or recklessly disregarded such statutes or regulations."*); *Hynard v. IRS*, 233 F. Supp. 2d 502, (S.D.N.Y. 2002)("[T]he complaint must be dismissed unless it alleges facts sufficient to demonstrate that IRS employees recklessly or intentionally disregarded some provision or regulation of the Internal Revenue Code.").

Plaintiff alleges in IRS violation no. 3 that the IRS violated 26 U.S.C. § 6303 "[i]nasmuch as Plaintiff does not have [copies of Notices of Levy]."  Am. Compl. ¶ 25.  But Section 6303 requires the IRS to provide notice to taxpayers within 60 days of making an assessment and demand payment; the statute does not include any requirements or references to Notices of Levy.  *See* 26 U.S.C. § 6303.  "According to IRS regulations, notice of the levy on a taxpayer's wages must be given to the person in possession of the salary...In this case that would be Plaintiff's employer, not Plaintiff."  *Bright v. United States*, 446 F. Supp. 2d 339, 345-46 (E.D. Pa. 2006); *see also* 26 C.F.R. § 301.6331-1(a)-(c).  Similarly, in IRS violation no. 4, Plaintiff claims that failing to receive such Notice of Levy is a violation of 26 U.S.C. §§ 6330 and 6320.  Am. Compl. ¶ 26.  But again these, statutes do not govern Notices of Levy.[15]  *See* 26

---

[15] Under these statutes, the IRS provides taxpayers with notice of their intention to levy and allows for an opportunity for hearing.  *See* 26 U.S.C. §§ 6330, 6320.  Plaintiff does not allege that she did not receive these notices of intent to levy, and, in fact, filed three requests for a collection due process hearing pursuant to these notices and received such a hearing.  *See* Wallace Tr., Exs. 23-25; Am. Compl. ¶ 10.

U.S.C. §§ 6330, 6320.   And Plaintiff is not entitled to receive a Notice of Levy.  *Bright*, 446 F.

Supp. 2d at 346.   Thus, Plaintiff cannot maintain a law suit under Section 7433 based on IRS's

failure to provide a notice of levy to Plaintiff, (*Bright*, 446 F. Supp. 2d at 346), and Paragraphs

25-26 of Plaintiff's Amended Complaint must be dismissed.[16]

        Plaintiff alleges in IRS violations nos. 5-16 that the IRS violated the statement in 26

U.S.C. § 6331(c) that a levy continue "until the amount due from him, together with all expenses,

is fully paid" because the levy was not released when Plaintiff's tax liabilities for the tax year

1994 were fully paid.   *See* Am. Compl. ¶ 27.  As an initial matter, the levy at issue is a

continuous levy under 26 U.S.C. § 6331(e), not a successive levy under 26 U.S.C. § 6331(c).

But even assuming Section 6331(c) applied, the amount due from the Plaintiff included

assessments from years other than 1994.  *See* Boroughs Decl., Ex. C.  The levy need not be

released until the amounts due from all tax years are fully paid.  *See* 26 U.S.C. §

6331(a)(authorizing the IRS to levy when a person "liable to pay *any* tax neglects or refuses" to

do so)(emphasis added).  While Plaintiff's tax liabilities for tax year 1994 were fully paid, her tax

liabilities for 1995-2003 were not.  *See* Boroughs Decl., Ex. C.  Thus, the "amount due" from her

was not "fully paid."   Plaintiff seems to recognize this, as she then makes the same allegation

with regards to eleven other tax years.  *See* Am. Compl. ¶ 28.  The latest tax year for which

Plaintiff makes this allegation is 2000.  *Id*.  Yet, at the time that tax year 2000 was paid off,

Plaintiff still owed on tax years 2001-2003.  *See* Boroughs Decl., Ex. C.  Thus, Plaintiff has

failed to allege a violation of Section 6331(c).

---

[16]  It should also be noted that Plaintiff later provided the United States with a second notice of levy that
she received from her pension office.  *See* Boroughs Decl., Ex. G.

## VII.  PLAINTIFF CAN ONLY RECOVER ACTUAL ECONOMIC DAMAGES UNDER 26 U.S.C. § 7433.

In a Section 7433, Plaintiff can collect "actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee" and "costs of the action" up to $100,000 in the case of negligence or $1,000,000 in the case of recklessness or intentional misconduct.  26 U.S.C. § 7433(b).  Because Plaintiff can only collect "actual, direct economic damages" under Section 7433, Plaintiff's claims for "mental anguish, anxiety, and emotional distress" and similar claims (*see* Am. Compl. ¶¶ 46-47) must be dismissed.  *See O'Brien v. Untied States*, 73 Fed. Appx 958, 595 (9th Cir. 2003); *Kabakjian v. United States*, 267 F.3d 208, 214 (3d. Cir. 2001).

## VII.  CONCLUSION

Plaintiff's claims are barred by the statute of limitations contained in 26 U.S.C. § 7433, and the United States is entitled to judgment as a matter of law.

DATED this 21st day of November, 2008.

Respectfully submitted,

KELLY H. RANKIN
United States Attorney

 /s/ Adair F. Boroughs
ADAIR F. BOROUGHS
Trial Attorney, Tax Division
United States Department of Justice

CAROL STATKUS
Assistant United States Attorney