LYNN BOAK, ESQ.
P.O. Box 20912
Cheyenne, WY 82003
(307) 634-6713
E-mail: lynnboaklaw@millect.com

ELIAS AOUN, ESQ. (*Pro Hac Vice*)
1730 N. Lynn St., # A-22
Arlington, VA 22209-2004
Telephone: (202) 257-7796
E-mail: eliaoun@yahoo.com

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| MARILYN WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2:08-CV-156-CAB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Mastro v. Potomac Elec. Power*

*Co.,* 447 F.3d 843, 849-50 (D.C.Cir.2006); *Aka v. Washington Hosp. Center,* 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc); *Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989); *Mulhern v. Gates*, 525 F.Supp.2d 174, 180 (D.D.C. 2007).

2.  Defendant's Motion for Summary Judgment should be dismissed for violating Fed. R. Civ. Pro. 10(b) because its paragraphs are not numbered.

3.  More importantly, Defendant's motion should be dismissed because it maintained positions that are contrary to the Constitution and established law. It advocated reasoning contrary to constitutional grounds and U.S. Supreme Court decisions.

4.  Plaintiff submits that there are genuine issues necessary to be litigated, and that Plaintiff is entitled to a judgment against Defendant, as a matter of law.

## I.    **Plaintiff's action is timely**

5.  Plaintiff did file this lawsuit after six months of an administrative claims being filed with the Internal Revenue Service (IRS) as per 26 CFR §301.7433-1(d).

6.   Plaintiff and Defendant disagree on when the two years limitation of 26
CFR §301.7433-1(g)(1) begins. To address this disagreement, the first
question to be asked is: when did the cause of action accrue? According
to 26 CFR §301.7433-1(g), it accrues when a Plaintiff "has had a
reasonable opportunity to discover all essential elements of a possible
cause of action." Then, the subsequent questions become: (1) what would
be considered "a reasonable opportunity", and (2) what are "all essential
elements"? The Courts offer more than one interpretation.

### A.    Case example No. 1

7.   In *Bennett*, according to the IRS, the plaintiff had a reasonable
opportunity to discover all essential elements of his causes of action by
no later than February 18, 1998, when the tax liens on the plaintiff's
property were released. *Bennett v. U.S.*, 366 F.Supp.2d 877 at 879
(D.Neb., 2005).

8.   The District Court for the District of Columbia took a similar position
and ran the statute from the date that the levy ended. If Defendant
disagreed with that ruling, Defendant should have filed a timely
reconsideration or appeal.  Defendant did not even contest the statute of
limitation in the early stages of this case in the District of Columbia.

### B.    Case example No. 2

9.   In *Nordbrock*, the court found that the date of submitting the administrative claims is the date of accrual. *Nordbrock v. U.S.*, 96 F.Supp.2d 944 at 946 (D.Ariz.,2000) Based on this standard, Plaintiff's lawsuit is timely.

### C.    Case example No. 3

10.  In *Snyder v. U.S.,* the court found that "Appellants demonstrated they had sufficient knowledge and capacity to file a timely lawsuit by submitting various administrative filings, including their June 1998 administrative request for a lien release." *Snyder v. U.S.*, 260 Fed.Appx. 488 at 493, (C.A.3 (Del.), 2008).

11.  In this case, Plaintiff filed her lawsuit in October 2007 within two years from July 2006, August 2006, and March 2007 – the dates when she filed her administrative claims and demonstrated "sufficient knowledge and capacity." [Exhibits A-1 through A-5]

### D.    Case example No. 4

12.  In *Gottlieb*, the Court said: ". . . Gottlieb's claim accrued, at the latest, on November 7, 1995, the date on which the IRS responded unfavorably to his request for administrative relief." *Gottlieb v. I.R.S.*, 4 Fed.Appx. 355, C.A.9 (Cal.), 2001.  The Court added: To toll the limitations period under

the "continuing wrong" doctrine, Gottlieb must establish that the IRS engaged in repeated collection efforts, occurring after November 7, 1995. *See Nesovic v. United States,* 71 F.3d 776, 778 (9th Cir.1995).

13. In the present case, the IRS responded unfavorably to Plaintiffs' administrative claims in November 2008. [Exhibit A-11] Moreover, the IRS engaged "in repeated collection efforts" after the time of the levy. As a matter of fact, Plaintiff just received a "statement of adjustment" from the IRS (dated December 1, 2008) asking for a payment of $22.99 despite the fact that the issue is in litigation. (Exhibit A-12)

14. Taking plaintiff's allegations in the light most favorable to her, this court has to conclude that Plaintiff did prove, under at least one set presented in these cases, that she has filed this lawsuit within the limitations period of Section 7433.


**II.           Plaintiff meets the Equitable Tolling standard**

15. The Supreme Court held that equitable tolling should be permitted in appropriate cases so as to avoid unjust results. *See Jones v. TransOhio Savings Association,* 747 F.2d 1037, 1039 (6th Cir.1984)

16. In order to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits, the doctrine of equitable

tolling may be applied to toll the running of a statute of limitations, provided it is in conjunction with the legislative scheme. The equitable tolling doctrine is read into every federal statute of limitations, and the decision whether the doctrine should be applied lies within the sole discretion of the court . . . *Wiltgen v. United States,* 813 F.Supp. 1387, 1394 (N.D.Iowa 1992)

17. There is no clear precedent disallowing equitable tolling in § 7433 actions . . . the Plaintiff reasonably may have been mislead and, as such, should not be completely doomed for her failure to develop expertise with regard to knowledge of the admittedly complex regulations governing the statute of limitations applicable in § 7433 actions. *Tenpenny v. U.S.*, 490 F.Supp.2d 852, 860-861 (N.D.Ohio, 2007).

18. The Tenth Circuit requires that an injury be "definite and discoverable, and nothing prevented plaintiff from coming forward to seek redress."

19. In this case, Plaintiff has actively pursued her judicial remedies in the best manner she knew how.  Plaintiff contested the IRS levies by filing a lawsuit in a state court – the Fourth Judicial District Court, Johnson County, Wyoming – on September 6, 2001. The state court case number is ci-2001-0096 (Exhibit A-13, pages US-0996 to US-1003).

20. On December 14, 2001, the case was transferred to the District Court of the U.S. District of Wyoming with a case number 01-cv-180-J. (Exhibit A-14)  The case later reached the U.S. Court of Appeals, Tenth Circuit, which issued its order on August 6, 2002.   The Appeals' case number is 02-8032. (Exhibit A-15)

21. On June 10, 2003, Plaintiff filed a notice to contest the IRS levies with the county recorder. (Deposition Exhibit 10)  On May 21, 2003, Plaintiff filed a "Notice of Default." (Deposition Exhibit 21)

22. Plaintiff actively pursued her judicial remedies by filing a pleading during 2001-2003.   Plaintiff acted to the best of her knowledge and abilities. She contested the levy, the IRS did not file a claim to perfect its claims, and Plaintiff filed a notice of default.  However, the levy continued.

23. The judicial system denied Plaintiff her rights, and the IRS continued to levy unlawfully in the face of a contested levy and default. Did the Department of Justice (DOJ) interfere then to ensure "justice?" Certainly not.  It is now interfering on behalf of a non-government agency AGAINST an American citizen to ensure that her rights are denied again.

24. Plaintiff had been advocating her rights with the IRS throughout. Plaintiff may have been misled to believe that her actions prior to this

lawsuit may have been sufficient to remove the illegal levies and restore her rights to her own money.  They did not.

25. Courts have ruled that "officials cannot be held to have violated rights of which they could not have known." *Pinder,* 54 F.3d at 1173 (emphasis added); *see also Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). *Hurt v. U.S.*, 914 F.Supp. 1346 at 1352 (S.D.W.Va., 1996).

26. In that same manner, Plaintiff cannot be held to have violated procedures of which she is not an expert. Throughout the years, she has been persistent to restore her rights and acted to the best of her abilities with the information available to her. No one would knowingly delay their own relief. If Plaintiff had found an attorney who would have taken her IRC 7433 case on a contingency basis, then she might have filed her present suit sooner than 2007.

27. In addition, Defendant's collection measures have not ceased. As an example, Plaintiff has recently received a statement for payment. [Exhibit A-12) Each collection attempt is a new violation that tolls the statute of limitations. The IRS continues to contact Plaintiff, and makes "adjustments."

28. As the court stated in *Tenpenny*, plaintiff in this case should not be doomed if she lacks "expertise with regard to knowledge of the admittedly complex regulations governing the statute of limitations."

29. An inability to seek legal relief on time cannot be used as an excuse to deny that relief, while Defendant is left with the fruits of an illegal act. Plaintiff's inability to know of her rights does not justify Defendant's continuation in depriving her of her rights. The protection of Plaintiff's rights to her money and property, and the fact that said money was levied illegally, has more constitutional relevance than Plaintiff's expertise on statute of limitations.

30. In addition, as it will be proven, Plaintiff's money was taken from her under the color of law.  There is no statue of limitation for fraud.


### III.   Plaintiff's Administrative Claims are valid

31. Defendant wants to cast a doubt about the administrative claims filed by Plaintiff and Plaintiff's Exhibits.

32. Plaintiff's attorney filed the original complaint with the administrative claims copies that were available to him at the time. The fact that they were not signed in the exhibits is secondary. What is required is that the claims "filed" be signed – and they were.  Plaintiff had already produced

copies of the signed administrative claims to Defendant during discovery. [Exhibits A-1 to A-5]

33. In its Summary Judgment and Answer to the Amended Complaint, Defendant keeps referring to the lack of attached exhibits. These exhibits were attached to the original complaint and Defendant could easily find them on Pacer.  Someone at the Clerk's office, when asked, stated that there was no need to re-file what has already been filed.

34. Defendant also claims that an administrative claim should contain "any available substantiating documentation" (Summ. Judg. Page 14) and "fair representation . . . to avoid surprises" for the Internal Revenue Service. (Summ. Judg. Page 16)

35. It would certainly be a "surprise" for the IRS to be told that they are pursuing an illegal levy as if such an act is outside their normal conduct. It would also be a "surprise" for the IRS not to be told information which it already has and had been explained by Plaintiff in dozens of letters.

36. Defendant makes an argument that Plaintiff should have given "supporting documentation, evidence and correspondence" (Summ. Judg. Page 14) as if that would have changed the course of the IRS conduct.  If the IRS had not respected Plaintiff in the past and meaningfully replied to her concerns since year 2001, Defendant

presented no argument that the IRS response would be any better if Plaintiff had collected all her correspondence since 2001 to 2006 and resubmit them again with her administrative claims.

37. Defendant's logic is that robbery is permissible until the person being robbed is able to do certain things (not over a certain time period, but all at once) to stop the theft – with total disregard to what right the thief has to the money in the first place.

38. Overall, Plaintiff has done a better job on meeting the administrative claim "requirements" than IRS agents on meeting their responsibilities and requirements.  In the "legal contest" between an American and the government, the facts and laws should be seen in the light most favorable to the individual American.

## IV.   Sovereign Immunity

39. IRC 7433 provides a waiver of sovereign immunity.

40. Defendant argues that "sovereign immunity has been waived only as to any claim set forth in Plaintiff's administrative claim." (Summ. Judg. Page 15)

41. In other words, Defendant has accepted that sovereign immunity has been waived for at least the "economic" damages "reasonably

encompassed" (Summ. Judg. Page 17) in Plaintiff's administrative claims and those permitted under IRC 7433.

## V.    The proper interpretation of IRC §7433

42. If "any provision" of the Internal Revenue Code is "recklessly or intentionally, or by reason of negligence" disregarded, then a person "may bring a civil action for damages against the United States in a district court of the United States."

43. Certain provisions of the Code relate to collecting federal taxes. If anything other than a tax-owed is collected, or if any federal tax is collected in violation of established legal standards, then that certainly would be considered as unauthorized collection measures.

44. To answer the question on whether anything other than a federal tax-owed was collected from Plaintiff, it becomes necessary to define what taxes are permissible under the tax code.  To answer whether anything was collected in violation of established legal standards, one must first define what these standards are.

45. It is the obligation of the IRS to inform anyone it addresses about the statutory basis of its action <u>at the time it seeks to enforce those actions</u>. However, the notices of levy do not state on their face under what IRC

section they were issued. Some have attached to them "Excerpts from the Internal Revenue Code" enlisting various sections such 6331(b), (c), and (e). There is no reference to 6331(a) or (h). (Exhibit A-16)

46. Although Plaintiff had argued in the past that the levy of her social security benefits ($3,449.10) and pension were in violation of the 15% cap of 6331(h), a more careful reading of 6331(a) conveys a new perspective on the issue. Defendant is still in violation of IRC §6331, but for another reason than the one previously stated.

47. Defendant was correct in claiming that Plaintiff's pension is not a federal payment and does not fall within IRC §6331(a)(1)(A). [Summ. Judg. Page 19] However, IRC 7433 relates to the levy of federal payments received by federal employees, and not all workers.

The language of IRC §6331(a)

48. The language of IRC §6331 states as follows:

> . . . **Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official . . .**

49. The certain designation of one person is an absolute exclusion of all others. When the compensation of federal workers is explicitly identified

in this fashion, and that of non-federal workers is as prominently left out, the rules of statutory construction say unambiguously that the latter is excluded.  If the compensation of literally <u>any</u> person actually can be, or lawfully is, reached by these levy provisions, then the specifications would be entirely superfluous and redundant.

50. This understanding is reinforced by the exclusive specification in 26 CFR 301.6331-1(a)(4). Although 301.6331-1(a)(4)(ii) refers to state employees, Plaintiff was not a state employee.

51. Plaintiff was a teacher at a local school district called "Wyoming Public School" (in Wyoming, MI). Public schools are owned by local communities, not the state – although a state has influence on what the schools teach.  The teachers and school districts deposit money in the state's pension fund to be repaid later by the state to retired teachers.  In addition, Plaintiff was retired (not a worker) at the time of the levies.

52. In addition, Plaintiff believes that her social security checks are not "federal payments" because it is money she paid and is now being refunded to her, rather than payments being made as a result of a privilege from the government.

53. As a result, Plaintiff is not a covered person under IRC 6331, and the levies made against her based on this section are unauthorized.

54. Plaintiff's analysis of section 6331(a) is supported by U.S. Supreme Court's instructions in *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 357 (1909) that,

> "Words having universal scope, such as 'every contract in restraint of trade,' 'every person who shall monopolize,' etc., will be taken, as a matter of course, to mean only everyone subject to such legislation, not all that the legislator subsequently may be able to catch."

55. and in *Gould v. Gould*, 245 U.S. 151, 153 (1917) that,

> **"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."**

56. and in *62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.*, 340 U.S. 593, 600 (1951):

> "In our anxiety to effectuate the congressional purpose of protecting the public, we must take care not to extend the scope of the statute beyond the point where Congress indicated it would stop."

57. This Court's judgment should be in Plaintiff's favor because the prescribed rules are in Plaintiff's favor. Section 6331 has to be "construed most strongly against the government, and in favor of the citizen."

58. Since Defendant's notices of levies lack the full provision of section 6331(a), these notices were potentially misleading to the party acting

upon them.  Defendant wants the Court to assume that their "notice of levy" has universal applicability.   However, their ploy is exposed by leaving section 6331(a) off the form.

59.   After a careful reading of IRC 6331(a), it is evident that it does not even apply to Plaintiff.  No levy whatsoever – at any percentage or amount – should have been permitted against Plaintiff under this section. Therefore, Plaintiff is entitled to damages for unauthorized levies by the IRS under IRC 6331(a).

**VI.   Fair Tax Collection Practices**

60.   IRS contacts in contravention of IRC §6304, such as to harass a person or in situations where the Service knows that a person is represented, could subject the United States to civil action (IRC §7433).  Violations of IRC §6304 could also subject Service employees to termination for misconduct.

61.   Despite the existence of this lawsuit, Plaintiff had received communications from the IRS requesting payments. For example, Plaintiff received a "statement of adjustment" dated December 1, 2008 requesting $22.99 in payments. (Exhibit A-12)

## VII. Voluntary or Mandatory?

62. "Our system of taxation is based upon voluntary assessment and payment, not upon distraint." Chief Justice Earl Warren, Flora v. U.S., 362 U.S. 145, 176 (U.S. 1960).  See *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917; Treas.Regs. on Procedural Rules (1954 Code) s 601.103(a).

63. If the Internal Revenue Code is voluntary, then Defendant should not be enforcing it on Plaintiff against her will – and levy her money.  If it is mandatory, Defendant needs to provide a proof to that effect before making any further arguments against Plaintiff. (Exhibit A-18)


## VIII. Defendant has interfered with "contractual obligations"

64. Plaintiff's pension is from the State of Michigan whose Constitution of 1963 states: "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a <u>contractual obligation</u> thereof which <u>shall not be diminished or impaired</u> thereby." (Article 9, § 24)

65. By levying Plaintiff's pension, Defendant did interfere with a "contractual obligation" guaranteed by the Michigan Constitution.  There is nothing in the U.S. Constitution that would conflict with or supersede Michigan's

obligation. There are no exceptions given to the IRS or anyone else in the language of the state constitution.

### IX.   Defendant is violating Wyoming's Constitution

66.   According to the State of Wyoming Constitution, "No tax shall be imposed without the consent of the people or their authorized representatives" (97-1-028).  The words "no tax" imply all forms of taxation.

67.   Plaintiff is not aware of any people's consent, Wyoming legislation, or U.S. Congress legislation authorizing an entity called "Internal Revenue Service" to collect taxes from the residents of Wyoming.  If that is not the case, Defendant needs to provide a contrary proof before making any further arguments against Plaintiff.

68.   According to 97-10-005, "No corporation organized under the laws of Wyoming Territory or any other jurisdiction than this state, shall be permitted to transact business in this state until it shall have accepted the constitution of this state and filed such acceptance in accordance with the laws thereof."

69.   In other words, for an entity called "Internal Revenue Service" to operate in Wyoming, it has to accept the state's Constitution which forbids taxation without consent. Plaintiff has no evidence that the IRS has been

given consent by the state's legislature or people.  If Defendant has such evidence, it needs to provide it before making any further arguments against Plaintiff.

**X.    The income tax is not a tax on all income**

70.  The income tax is not a tax on all income, but a tax on only a specialized subset of the larger class of income.  "We must reject . . . the broad contention submitted in behalf of the government that all receipts—everything that comes in—are income . . ." *Southern Pacific Co. v. Lowe,* 247 U.S. 330, 335 (1918).

71.  ". . . **taxation on income** was in its nature **an excise** entitled to be enforced as such . . ." *Brushaber v. Union Pacific Railroad Co.,* 240 U.S. 1, 17 (1916).

72.  "**Excises** are 'taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges.' . . . the requirement to pay such taxes **involves the exercise of privileges** . . ." *Flint v. Stone Tracy Co.,* 220 U.S. 107, 151-152 (1911).

73.  "The terms '**excise tax**' and '**privilege tax**' are synonymous." *American Airways v. Wallace,* 57 F2d 877, 880 (D.C. Tenn. 1932).

74. "**PRIVILEGE**: <u>A particular and peculiar benefit</u> or advantage enjoyed by a person, company, or class, <u>beyond the common advantages of other citizens</u> . . ." <u>Black's Law Dictionary</u>, 4th edition.

75. "The right to follow any of the common occupations of life is an inalienable right. . . ." *Butcher's Union v. Crescent*, 111 U.S. 746, 762 (1884).

76. Common occupations are an inalienable right, not the exercise of a privilege. For a government to tax revenue simply as an exercise of raw power is for that government to tax a person's exercise of the fundamental, individual, common law right to work or trade. That was not the purpose of the internal revenue law when it was originally enacted, nor is there a constitutional or statutory proof that this is the purpose today.

77. Following is a quote taken from the first income tax return

> *"I hereby certify that the following is a true and faithful statement of the gains, profits, or income of _____  _____, of the _____ of _____, in the county of _____, and State of _____, whether derived from any kind of property, rents, interest, dividends, salary, or from any profession, trade, employment, or vocation, or from any other source whatever, subject to an* **income tax** *under the* **excise laws** *of the United States."* (Emphasis added.)

<u>The Sixteenth Amendment</u>

78.   The 16th Amendment "**conferred no new power of taxation** . . ." *Stanton v. Baltic Mining Co.,* 240 U.S. 103, 112 (1916) and "**does not extend the taxing power to new or excepted subjects** . . ." *Peck v. Lowe*, 247 U.S. 165, 172 (1918).

Taxation on Federal Sources of "Income"

79.   There is a tax on the income of employees of the federal government and on revenues in which the federal government has a direct ownership interest. In no respect whatsoever does the FEDERAL Income Tax purport to be anything but the limited, specialized tax that it must be, or to touch upon any revenues beyond the constitutional limits set for it. (Exhibit A-17)

The Law of the Land, above all other

80.   According to the U.S. Constitution, Article I, Section 2: "direct taxes shall be apportioned among the several states"

81.   Article I, Section 9: "No capitation, or other direct, tax shall be laid, unless in proportion to the Census or Enumeration..."

82.   The Fifth Amendment reads: "No person shall be  . . .  deprived of life, liberty, or property, without due process of law."

83.   The Fourteenth Amendment, Section 3, states: "No person shall....hold any office, civil or military, under the United States.....who, having

previously taken an oath, . . . as an officer of the United States.... to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

84.  Article III, Section 3: "Treason against the United States, shall consist . . . in adhering to their enemies, giving them aid and comfort."


**XI.  Conclusion**

85.  Whether an amount can be characterized as a tax, and/or whether any tax is due for collection, is dependent on the existence of a PREVIOUSLY "defined liability."  That is the position held by courts at all levels.  Any amount which exceeds liability is not, and never was, an amount of tax.

86.  Defendant failed to offer any evidence to support the constitutional basis of Plaintiff's tax liability. Defendant failed to prove that all of Plaintiff's compensations for the years in question were derived from a federally conferred privilege, or were federally connected – and upon which any assessment or tax liability has arisen.

87.  U.S. Department of Justice (DOJ) attorneys are eager to place the burden on the victim of IRS abuses and declare that the person should have known "the law" and all minute details about statute of limitations, how

to file administrative claims, etc.   Simultaneously, they see nothing wrong in their application of the tax code in violation of the Constitution.

88. Instead of stating what Plaintiff should have known or ought to know, do DOJ attorneys know what they are defending? If the answer is yes, then let them answer the following questions before making any further arguments against Plaintiff:

89. How did an indirect tax become applicable directly to Plaintiff?  What part of Plaintiff's revenues is excise or privilege?  How can Plaintiff have a tax liability when the DOJ is misapplying the tax code and in violation of the Constitution?  How the voluntary "filing" became mandatory?  How levying a person's property without due process of law is consistent with the Fifth Amendment?

90. Once Defendant answers these questions, then Plaintiff will respond to the remainder of Defendant's arguments.

91. Any failure to provide specific answers would amount to fraud.

> "Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading." *U.S. v. Tweel*, 550 F.2d 297, 299 (C.A.Fla. 1977)

92. For Plaintiff to owe any "tax," Plaintiff must have been federally-connected engaged in a taxable activity, and therefore liable for the **federal-indirect-excise-privileged-income tax**.

93. Since Plaintiff is in no contractual relationship with the federal government, and is in fact a retired school teacher, by Defendant's refusal to return to Plaintiff property stolen from her under the guise of "tax" collection and without due process before the levy, the DOJ, the IRS, and their attorneys are in violation of their oath of office and are engaged in an insurrection and rebellion against the U.S. Constitution.

94. As the Supreme Court observed in *Escobedo v. State of Illinois*, 378 US 478, 490 (1964): **"If the exercise of Constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system."**

95. Defendants' Motion for summary judgment should be dismissed and Plaintiff should be awarded damages she rightfully deserves.

WHEREFORE Plaintiffs request that this Honorable Court do grant Plaintiff damages and the relief herein requested, along with fees, costs, and other relief the Court deems appropriate.


Respectfully submitted,

__/s/Elias Aoun_____                           Date: December 12, 2008
Elias Aoun, Esq. Bar Number 479315
1730 N. Lynn St., # A-22
Arlington, VA 22209-2004
E-mail: Lawyer2008@yahoo.com
Cell Phone 202-257-7796

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing, along with the attached exhibits have been served upon the following by electronic filing on December 12th, 2008:

KELLY H. RANKIN
United States Attorney
CAROL A. STATKUS
Assistant United States Attorney
2120 Capitol Avenue, Room 4002
Cheyenne, Wyoming 82001

ADAIR F. BOROUGHS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, DC 20044

Attorneys for the United States


____/s/ Elias Aoun___
ELIAS AOUN, ESQ.