FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR 08 2009

Stephan Harris, Clerk
IN THE UNITED STATES DISTRICT COURT Cheyenne

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| MARILYN WALLACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 08-CV-156-B |
| | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on the United States' Motion for Summary Judgment [doc. # 33]. A hearing was held concerning this matter on February 19 and 20, 2009. Elias Aoun (appearing by telephone) and John E. Frentheway appeared on behalf of the Plaintiff, Marilyn Wallace. Adair F. Boroughs and Carol A. Statkus appeared on behalf of the United States of America. After considering the motion, reviewing the materials on file, and hearing oral arguments, and being fully advised in the premises, this Court FINDS that the United States' motion should be GRANTED.

**I.      BACKGROUND**

The Plaintiff, Marilyn Wallace is a resident of Buffalo,

Wyoming and a retiree of the Michigan Public School System. (Amd.
Compl. ¶ 2.) On May 14, 2001, the Internal Revenue Service (IRS)
issued a Notice of Levy to the Michigan Public School Employees
Retirement System due to federal income tax deficiencies owed by
the Plaintiff for the years of 1985-1994. (Amd. Compl. ¶ 5.) On
September 25, 2001, the IRS began levying Plaintiff's teaching
pension, and the state of Michigan began withholding $945.54 per
month. (Amd. Compl. ¶ 6.) The monthly levies continued until June
2006, and withheld a total amount of $53,895.78. (Amd. Compl. ¶
6.)

Plaintiff corresponded with the IRS numerous times, disputing
the levy on her pension and social security. (Amd. Compl. ¶ 11.)
Additionally, on May 25, 2006 Plaintiff met with IRS Agent Thomas
Bentley in Billings, Montana. (Amd. Compl. ¶ 10.) According to
Plaintiff, the levy was terminated immediately upon this meeting.
(Amd. Compl. ¶ 10.) Finally, on March 16, 2007 Plaintiff received
a refund from the IRS in the amount of $10,954.18. (Amd. Compl. ¶
12.) Plaintiff claims that the actions of the IRS in levying
against her pension were unauthorized and illegal. She also
alleges that the assessments made against her were excessive.[1]

---

[1] The Court refuses to address the Plaintiff's allegations that
the IRS assessments were excessive, as 26 U.S.C. § 7433 "authorizes

2

The United States denies that the amount withheld from Plaintiff's pension and social security benefits were either excessive or unauthorized. The United States argues that the amount levied from Plaintiff's income was appropriate because Plaintiff was delinquent and had been delinquent in her tax payments for a number of years.

## II.   PROCEDURAL BACKGROUND

Plaintiff initially filed her complaint in the United States District Court for the District of Columbia (D.C. Court). (Compl.) Upon the filing of Plaintiff's complaint, the United States moved to dismiss the case, or in the alternative to transfer the case to this District Court. (United States' Mot. to Dismiss and to Transfer Venue.) In considering the United States' motion the D.C. Court determined that transfer of venue was appropriate. (Mem. Opinon Granting the Def.'s Mot. to Transfer Venue and Denying the Def.'s Mot. to Dismiss ("D.C. Order").) It, therefore, granted the United States' motion to transfer venue, and denied the United

---

suits for damages only in the narrow circumstances where an IRS agent has violated tax statutes or regulations in connection with the *collection* of federal taxes." Quinn v. United States, No. CIV-03-192-R, 2003 WL 22133715, at \*4 (W.D. Okla. July 10, 2003) (emphasis added). Additionally, the United States, at hearing, came forth with competent evidence proving that the assessments made against the Plaintiff were warranted and necessary.

States' motion to dismiss. (D.C. Order.)

## III. JURISDICTION AND VENUE

This Court exercises jurisdiction over this action pursuant to
28 U.S.C. § 1346(a)(1). Additionally, venue is proper pursuant to
28 U.S.C. § 1402(a)(1).

## IV. SUMMARY JUDGMENT STANDARD

It is well established that a district court may grant a
motion for summary judgment "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is
no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).
The initial burden lies with the moving party to inform the court
of the basis for its motion. Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986). Once the movant has initially established that
there is no genuine issue of fact, the burden shifts to the non-
moving party to prove, through specific facts, that a triable issue
does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp., 475 U.S. 574, 586-87 (1986).

When determining whether summary judgment is appropriate, the
Court must view the evidence in the light most favorable to the
non-moving party. Id. at 587. Nevertheless, the non-moving party

4

must present more than "mere assertions and conjecture" to withstand a summary judgment motion. York v. Am. Tel. & Tel. Co., 95 F.3d 948, 955 (10th Cir. 1996). Likewise, "[t]he mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). In sum, summary judgment is appropriate when the non-movant is unable to present facts on which a reasonable jury could find in his or her favor. Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006).

V.      **DISCUSSION**

       A.   Reconsideration

       In its Memorandum Opinion Granting the Defendant's Motion to Transfer Venue and Denying the Defendant's Motion to Dismiss, the D.C. Court, without the benefit of briefing from the parties, determined that the Plaintiff had appropriately filed her lawsuit within the two year statute of limitations provided in 26 U.S.C. § 7433. The D.C. Court stated, "In this case, the plaintiff brought suit well beyond two years after the levy attached, but within two years after it was released . . . to consider the attachment of the levy as the date of accrual would allow the defendant to continue illegal conduct indefinitely." (D.C. Order 7.) Because the D.C.

5

Court determined that the accrual date of the action began only after the levy had ended, it found that Plaintiff had filed suit "well within two years." (D.C. Order 7.)

Nevertheless, in making its decision, the D.C. Court did not have the benefit of the additional evidence that has been provided to this Court with the United States' Motion for Summary Judgment. Additionally, the D.C. Court was deprived of the opportunity to consider briefs or argument of either party on the issue of the statute of limitations because neither party had considered whether the Plaintiff had met the statute of limitations at the time that the United States moved to dismiss this action.     Based on the additional evidence and the arguments of the parties, the Court is now convinced that the D.C. Court's opinion is clearly erroneous, and must be reconsidered by this Court. See Arizona v. California, 460 U.S. 605, 619 n. 8 (1983) ("Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice.").

The principle that a district court judge should not disturb a prior ruling absent compelling circumstances is often referred to as the law of the case doctrine.   See Arizona, 460 U.S. at 618

6

("As most commonly defined, the doctrine posits that when a court
decides upon a rule of law, that decision should continue to govern
the same issues in subsequent stages in the same case."). This
doctrine is based on  the justice system's desire to maintain
consistency in rulings, and to ensure that when a case is
transferred from one judge to another, the parties will not end up
back at square one, relitigating the same issues that have already
been decided. Mayer v. Cornell Univ., Inc., 909 F. Supp. 81, 83
(N.D.N.Y. 1995); Best v. Shell Oil, Co., 107 F.3d 544, 546 (7th
Cir. 1997).

        This concept, however, is not "etched in stone." Mayer, 909
F. Supp. at 83. Instead, it is a doctrine that directs the court's
discretion, but does not limit its power. Arizona, 460 U.S. at
618.  Although a court should be loathe to revisit an earlier
decision already made, it may do so when the circumstances of law
or fact have so changed as to compel reconsideration of a previous
ruling. See Mayer, 909 F. Supp. at 83 ("[T]he law of the case
counsels against reconsideration absent compelling circumstances,
including an intervening change of law, the availability of new
evidence, or to correct a clear error or prevent manifest

injustice." (citations omitted)).[2]

Additionally, it is imperative for, courts to recognize that a case changes as it matures. Reconsideration must be available when new facts are brought to light to avoid the possibility of being overturned on appeal. See Brengettcy v. Horton, 423 F.3d 674, 680-81 (7th Cir. 2005) (recognizing that two judges who had decided the same issue differently in the same case were not presented with "precisely the same question in precisely the same way" as one considered a motion to dismiss while the other was faced with a summary judgment motion); see also Arizona, 460 U.S. at 618-19 (recognizing that a case matures as it moves through the ordinary course of litigation). Both the Defendant and the Plaintiff, in this case, have discovered new evidence that has assisted this Court in making its determination. This new evidence was not available to the D.C. Court when it decided that the Plaintiff had met the statute of limitations. Based on this new evidence, reconsideration of the D.C. Court's order is appropriate

---

[2] Many courts have also recognized the ability of a second judge, on the same hierarchical level as the judge who originally ruled on the issue, to revisit that ruling if the initial order was interlocutory in nature, as is the case here. Langevine v. Dist. of Columbia, 106 F.3d 1018, 1023 (D.C. Cir. 1997); In re United States, 733 F.2d 10, 13 (2d Cir. 1984); Mayer, 909 F. Supp. at 82-83.

here.

B. Statute of Limitations

In reconsidering the D.C. Court's decision regarding the statute of limitations, this Court initially recognizes that 26 U.S.C. § 7433 constitutes a limited waiver of the United States' sovereign immunity. Shipley v. Internal Revenue Serv., No. 05-3273, 2006 WL 497720, at *1 (10th Cir. March 2, 2006); Gass v. United States Dept. of Treasury, Nos. 99-1179, 98-B-75, 2000 WL 743671, at *2 (10th Cir. June 9, 2000). As such, the statute must be read narrowly. Shipley, No. 05-3273, 2006 WL 497720, at *1 (citing Allied/Royal Parking, L.P. v. United States, 166 F.3d 1000, 1003 (9th Cir. 1999) ("[S]ection 7433's limited waiver to the government's sovereign immunity must be read narrowly.")). As a result, the Court must narrowly interpret the United States' waiver of sovereign immunity, and must only allow suit under this section if the Government has consented to be sued.

Here, the Government has only consented to suit pursuant to § 7433 within two years of the alleged infraction. Indeed, § 7433 affirms, "Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought *only within*

9

*2 years after the date the right of action accrues.*"   26 U.S.C. §
7433(d)(3) (West 2009) (emphasis added).   Congress neglected,
however, to define when the right of action accrues in cases such
as these.   Nevertheless, in interpreting that statute, the
Department of the Treasury adopted the following regulation, "A
cause of action  .  .  .  accrues when the taxpayer has had a
reasonable opportunity to discover all essential elements of a
possible cause of action."   26 C.F.R. § 301.7433-1(g)(2) (West
2009).   The Court must, therefore, determine, based upon the
evidence presented, when the Plaintiff had a reasonable opportunity
to discover that the collection practices of the IRS were unlawful.

Based on the discovery material presented to the Court, it is
clear that the Plaintiff knew of, and decided that the levy was
illegal and impermissible even before it began.   (Wallace Dep.
31:1-25, 32: 1-6, 41: 16-17, 46:2-4, 48: 7-12, Oct. 30, 2008.)
Additionally, Plaintiff objected to the IRS levy on numerous
occasions throughout the time that the levy was in place. (Wallace
Dep. 42:20-25, 43:1-20, 47:10-25, 48:1-3, 48:24-25, 49:1-7, 49:8-
25, 50:2-9, 52:13-21).   The levy began in September of 2001.   If
Plaintiff believed as early as June of 2001 that the levy about to
be imposed upon her pension was illegal, as the evidence shows, she

had more than a reasonable opportunity to discover all of the
essential elements to her claim by September 2003, two years after
the levy commenced.  See Dziura v. United States, 168 F.3d 581, 583
(1st Cir. 1999) ("[A]bsent a disability or other impediment to
suit, the applicable limitation period ordinarily will begin to run
when an injured party knows or should know the critical facts
related to his claim."); Overton v. United States, 74 F. Supp. 2d
1034, 1040-41 (D.N.M. 1999) ("The two-year statute of limitations
started to run when [Plaintiff] was first notified . . . ."); Amoco
Prod. Co. v. Aspen Group, 59 F. Supp. 2d 1112, 1121-22 (D. Col.
1999) (explaining that Plaintiffs never claimed that they were
unaware of the facts surrounding the alleged infractions by the
IRS, therefore, the Court could not consider allegations pertaining
to infractions occurring more than two years prior to when the
Plaintiffs filed suit); Shipley, No. 05-3273, 2006 WL 497720, at *1
("Ordinarily, a right of action accrues when the levy commences").

    Plaintiff has never alleged that she was unaware of the facts
surrounding the circumstances of the levy imposed by the Internal
Revenue Service.  In fact, she filed a similar lawsuit in Wyoming
state court in September of 2001 arguing that the IRS assessments
were illegal.  Complaint, Wallace v. United States, No. 01-CV-180-J

                                11

(D. Wyo. Oct. 16, 2001). This case was removed to the United
States District Court for the District of Wyoming which later
dismissed Plaintiff's claims. Order on Removal, <u>Wallace v. United</u>
<u>States</u>, No. 01-CV-180-J (D. Wyo. Nov. 21, 2001); Order Granting
United States' Motion to Dismiss, <u>Wallace v. United States</u>, No. 01-
CV-18-J (D. Wyo. Nov. 28, 2001). Eventually, this dismissal was
affirmed on appeal. <u>Wallace v. United States</u>, No. 02-8032 (10th
Cir. Aug. 6, 2002) Clearly, the Plaintiff knew, and in fact
objected to the levy, at least as early as September of 2001.[3]

The accrual date for Plaintiff's action, therefore, must be
set in September of 2001 when the Plaintiff had a reasonable
opportunity to discover all of the essential elements of her claim.
As a result, Plaintiff was required to file suit by September of
2003. Instead, Plaintiff filed suit pursuant to 26 U.S.C. § 7433
on December 7, 2007. Plaintiff has presented the Court with no
evidence to rebut the United States' contention that Plaintiff knew
of the essential elements of her cause of action as of September

---

[3]   The Court recognizes that because Plaintiff has already brought
suit concerning the actions of the IRS in levying on her income,
res judicata could prevent the Court from issuing another decision
here.    However, the previous decision did not actually and
necessarily resolve the issue of illegal collection practices
pursuant to 26 U.S.C. § 7433. The Court simply determined that the
Plaintiff could not rely on 26 U.S.C. § 7433 because she had not
yet exhausted her administrative remedies.

2001. Although the Court must take the facts in the light most favorable to the Plaintiff, the Plaintiff is still required to come forth with enough evidence to create a genuine issue of fact. Matsushita, 475 U.S. at 587; York, 95 F.3d at 955; Lawmaster, 125 F.3d at 1347. The Plaintiff has failed to do so here. As a result, Plaintiff's claims are time-barred, and her Amended Complaint must be dismissed.

D. Equitable Tolling

Finally, in her brief opposing the United States' motion for summary judgment, the Plaintiff argues that the statute of limitations should be equitably tolled "to avoid unjust results." (Pl.'s Mem. in Opposition to Def.'s Mot. for Summ. J. 5-9.) Initially, the Court notes that equitable tolling is available "only in rare and exceptional circumstances," United States v. Fredette, 191 Fed. Appx. 711, 713 (10th Cir. 2006), and that equitable relief should be extended "sparingly" by federal courts. Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990). Plaintiff argues, however, that her situation is just such a rare and exceptional circumstance warranting equitable tolling.

Essentially, Plaintiff argues that she was ignorant of the law and as a result, equitable tolling is appropriate in this case. It

13

is a well-settled principle, however, that ignorance of the law cannot invoke the protections of equitable tolling. Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998); Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999). Parties to a lawsuit, be they *pro se* or not, are chargeable with knowledge of the law. Marsh, 223 F.3d at 1220; Dziura, 168 F.3d at 583; Fisher, 174 F.3d at 714. As a result, Plaintiff's argument that equitable tolling should apply to her case is unpersuasive.

Plaintiff's argument becomes even less persuasive, when it is clear that Plaintiff filed a similar suit regarding the illegal assessment of taxes against her in 2001. It is inherently inconsistent for the Plaintiff to file suit in 2001 regarding the exact actions of the IRS that she is challenging here, but later argue that equitable tolling should apply to her because she was ignorant of her rights and the law. Clearly, this is not a rare and exceptional circumstance in which the Court should equitably toll the statute of limitations.

## VI. CONCLUSION

NOW THEREFORE, IT IS HEREBY ORDERED that the United States' Motion for Summary Judgment should be GRANTED.

14

IT IS FURTHER ORDERED that any outstanding motions pertaining
to the current action are hereby denied as moot.

Dated this _____ day of April, 2009.

_____

UNITED STATES DISTRICT JUDGE

15