John E. Frentheway, Esq.
P.O. Box 181
Cheyenne, WY 82003
(307) 632-2979
E-mail: JNFrentheway@Juno.com

Elias Aoun, Esq. (*Pro Hac Vice*)
1730 N. Lynn St., # A-22
Arlington, VA 22209-2004
Telephone: (202) 257-7796
E-mail: eliaoun@yahoo.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| Marilyn J. Wallace, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2:08-CV-156-CAB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

Plaintiff files this memorandum in support of her motion to reconsider the Court's Order of April 8, 2009 granting Defendant's motion for summary judgment solely based on the statute of limitations.

## STATEMENT OF POINTS AND AUTHORITIES

1.     As the Court noted, in a motion for summary judgment, the initial burden lies with the moving party to inform the court of the basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Once the movant has initially established that there is no genuine issue of fact, the burden shifts to the non-moving party to prove, through specific facts, that a triable issue does exist.  *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).   When determining whether summary judgment is appropriate, the Court must view the evidence in the light most favorable to the non-moving party. *Id.* at 587

## ARGUMENT

2.     The Court's granting of summary judgment was based on its conclusion (1) that Plaintiff's claims are time-barred and (2) that equitable tolling does not apply.  The Court erred on both counts.

## I.     Reconsideration of D.C. Court ruling

3.     The U.S. District Court for the District of Columbia (D.C. Court) stated: "to consider the attachment of the levy as the date of accrual would allow the defendant to continue illegal conduct indefinitely."

4.   This Court held that both Defendants and Plaintiff have discovered new evidence which "was not available to the D.C. Court when it decided that the Plaintiff had met the statute of limitations." (page 8)

5.   The Court did not say specifically what "new evidence" it is referring to and its relevance to the statute of limitation.  The Court is required to clarify its position.  If the Court meant by "new evidence" the cases filed by Plaintiff in Wyoming prior to this lawsuit, both parties knew of these filings or could have easily discovered the information in their own records at the time of the D.C. Court filing. Thus, that "new evidence" cannot be classified as "new," and Plaintiff cannot be penalized for Defendant not using any argument sooner in this litigation process.

6.   During this lawsuit, Plaintiff stated that Defendant did not appeal the order of the U.S. District Court for the District of Columbia which ruled in favor of the timely filing of this case.  Defendant had thirty days for its appeal and forfeited that opportunity.  This Court did not find any objection for Defendant not abiding by the time limitation for appeal, and did not clarify in its decision the reasons it did not take into consideration the violation of that time limitation – especially since the sole issue it considered against Plaintiff was that its case is time-barred.

This Court did not clarify how not appealing an issue within the prescribed time was not also time-barred for Defendant.

7.  Moreover, under the law of the case doctrine, "it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous *and* would work manifest injustice." *Arizona v. California*, 460 U.S. 605, 619 n. 8 (1983)

8.  This Court claimed that the D.C. Court ruling was erroneous but did not explain how reversing that ruling did not manifest injustice.  The test is a two-prong test, and both conditions must be met before the test applies.  This Court erroneously reversed the D.C. Court by relying solely on one element of that test.

9.  Plaintiff believes that the D.C. Court's ruling was not erroneous.  It was proper to prevent the IRS from continuing its "illegal conduct indefinitely" and to prevent injustice against Plaintiff.

10.  In addition, this Court misapplied legal analysis.  This Court sided with Defendant in claiming that Plaintiff knew of the essential elements in September 2001.  The D.C. Court also knew that the levy began in September 2001.  Despite that knowledge, the D.C. Court determined that the accrual date of the action began after the levy had ended.  It did

not take into consideration the date of when the levy began to calculate the statute of limitation.

11.  Even if this Court is correct about the argument it raised that "Plaintiff was required to file suit by September of 2003," this Court did not explain why counting from the date the levy ended is not an alternative and proper measure to count the two-year period.  Based on case law, there is more than one correct way to count the two-year period.  By taking the evidence in the light most favorable to Plaintiff, then this Court would have had to abide by the method which would find Plaintiff acting within the prescribed time-frame, as the D.C. Court properly ruled.

12.  The D.C. Court considered "the following possible dates of accrual: May 25, 2006, the date on which the plaintiff met with Bentley and the approximate date that the levy ended; July 5, 2006, the date on which the plaintiff filed her first administrative claim; August 28, 2006, the date on which the plaintiff filed her second administrative claim; and March 16, 2007, the date on which the IRS mailed the plaintiff checks totaling $10,954.18. The plaintiff filed her complaint on October 11, 2007, which is well within two years of all of these dates."

13. Since this Court has specifically mentioned the D.C. Court's consideration of the date of releasing the levy (pages 5-6) as the date the accrual began, then this Court has not reversed the other two considerations presented by the D.C. Court: "the date on which the plaintiff filed her second administrative claim; and March 16, 2007, the date on which the IRS mailed the plaintiff checks totaling $10,954.18."

14. Reversing the D.C. Court on one issue does not necessarily indicate that the reversal is on all issues, especially since this Court did not explain why the date of filing the administrative claims or receiving the IRS checks cannot be considered dates of accrual.

15. This court did not overrule the D.C. Court's finding on these issues, and therefore these dates remain a legitimate ground for this case being filed timely.  As a result, this Court's order of April 8th granting summary judgment based on the statute of limitation is invalid and must be reconsidered or vacated because this Court considered only Defendant's analysis of the date of accrual and did not determine the issue in the light most favorable to Plaintiff.

**II.    Statute of limitations**

16.    This Court argued that (1) "Plaintiff knew of the essential elements of her cause of action as of September 2001" (Page 12-13) – when the IRS began levying Plaintiff's teaching pension; (2) "Plaintiff was required to file suit by September of 2003" (page 12); and "Plaintiff has presented the court with no evidence to rebut the United States' contention." (page 12)

17.    It is not true for the Court to claim that Plaintiff failed to present the Court with evidence "to rebut the United states' contention that Plaintiff knew of the essential elements of her cause of action as of September 2001." Plaintiff did present arguments, but the Court failed to take them into consideration.

"Essential Elements" Issues Previously Raised by Plaintiff

18.    According to 26 CFR §301.7433-1(g), the cause of action accrues when a Plaintiff "has had a reasonable opportunity to discover all essential elements of a possible cause of action."

19.    In her memorandum in opposition to summary judgment, Plaintiff outlined case examples regarding different courts interpretations of what would be considered "a reasonable opportunity" and "all essential elements." This Court did not take all these arguments into consideration.  These arguments would be repeated herein.

### A.      Case example No. 1

20.    In *Bennett*, according to the IRS, the plaintiff had a reasonable
opportunity to discover all essential elements of his causes of action by
no later than February 18, 1998, when the tax liens on the plaintiff's
property were released. *Bennett v. U.S.*, 366 F.Supp.2d 877 at 879
(D.Neb., 2005).

21.    The District Court for the District of Columbia took a similar position
and ran the statute from the date that the levy ended. If Defendant
disagreed with that ruling, Defendant should have filed a timely
reconsideration or appeal.

22.    This lawsuit was filed within two years of when the levy was released on
May 25, 2006 by IRS Agent Thomas Bentley.

23.    As stated earlier, this Court erroneously reversed the D.C. Court ruling.
This court did not even provide any reasoning or justification on why
Defendant was not time-barred for not contesting the issue within the
prescribed time for appeal or reconsideration.

### B.      Case example No. 2

24.    In *Nordbrock*, the court found that the date of submitting the
administrative claims is the date of accrual. *Nordbrock v. U.S.*, 96

F.Supp.2d 944 at 946 (D.Ariz.,2000) Based on this standard, Plaintiff's lawsuit is timely.

25.   In its order of April 8th, this Court ignored this Plaintiff's argument without explaining why "submitting the administrative claims" cannot be used in this case as a standard toward having "a reasonable opportunity to discover all essential elements."

### C.   Case example No. 3

26.   In *Snyder v. U.S.,* the court found that "Appellants demonstrated they had sufficient knowledge and capacity to file a timely lawsuit by submitting various administrative filings, including their June 1998 administrative request for a lien release." *Snyder v. U.S.*, 260 Fed.Appx. 488 at 493, (C.A.3 (Del.), 2008).

27.   In this case, Plaintiff filed her lawsuit in October 2007 within two years from July 2006, August 2006, and March 2007 – the dates when she filed her administrative claims and demonstrated "sufficient knowledge and capacity."

28.   In its order of April 8th, this Court ignored this Plaintiff's argument without explaining why it is inapplicable toward having "a reasonable opportunity to discover all essential elements."

**D.    Case example No. 4**

29. In *Gottlieb*, the Court said: ". . . Gottlieb's claim accrued, at the latest, on November 7, 1995, the date on which the IRS responded unfavorably to his request for administrative relief." *Gottlieb v. I.R.S.*, 4 Fed.Appx. 355, C.A.9 (Cal.), 2001.  The Court added: To toll the limitations period under the "continuing wrong" doctrine, Gottlieb must establish that the IRS engaged in repeated collection efforts, occurring after November 7, 1995. *See Nesovic v. United States,* 71 F.3d 776, 778 (9th Cir.1995).

30. In the present case, the IRS responded unfavorably to Plaintiffs' administrative claims in November 2008. [Exhibit A-11] Moreover, the IRS engaged "in repeated collection efforts" after the time of the levy. As an example, Plaintiff received a "statement of adjustment" from the IRS (dated December 1, 2008) asking for a payment of $22.99 despite the fact that the issue is in litigation. (Exhibit A-12)

31. In its order of April 8th, this Court ignored this Plaintiff's argument without explaining why it is inapplicable toward having "a reasonable opportunity to discover all essential elements."

32. Therefore, this Court cannot accuse Plaintiff of failing to contest the "essential elements" argument presented by Defendant when the Court has failed to consider those arguments.

<u>This Court's Decision Conflicts with the Tenth Circuit</u>

33.   It is an absurdity within the judicial system to deny a Plaintiff her rights when she filed suits in years 2001-2002 for failing to exhaust her administrative remedy, and now deny her justice after she exhausts her remedies because she "knew" of the elements when she filed a suit in 2001-2002.

34.   If Plaintiff's 2001-2002 court cases were dismissed for failing to exhaust her remedies, and exhausting her remedies is a component of the "essential elements," then what is the basis of Defendant and this Court claiming that Plaintiff "knew" the essential elements in September 2001?

35.   If simply knowing of the levy and objecting to it – and who would not know when money is taken from them and object to a levy – by filing a suit was sufficient to constitute "a reasonable opportunity to discover all essential elements," then the Tenth Circuit would have ruled on the issues in 2002 rather than dismissing the case for not exhausting administrative remedies.

36.   This Court's decision of granting Defendant's summary judgment based on the pretext that Plaintiff "knew" the essential elements in 2001 is a faulty presumption and contrary to the Tenth Circuit's intent or opinion.

37.     In opposing Defendant's summary judgment, Plaintiff stated that she filed this lawsuit within two years of exhausting her administrative remedies.   However, the Court ignored this argument without any explanation.

<u>Defendant agrees with Plaintiff</u>

38.     In *Tenpenny*, the United States argued that the latest possible accrual date is the date Plaintiff submitted her administrative claim to the IRS. *Tenpenny v. U.S.*, 490 F.Supp.2d 852 at 858-859 (N.D.Ohio, 2007) Once again, the date of submitting the administrative claims is the date of accrual. Plaintiff's lawsuit is timely based on this standard.

39.     In the present case, Plaintiff was denied relief without Defendant or the Court contesting this issue.

<u>The Element of Fraud</u>

40.     During oral argument, Plaintiff stated that statutes of limitations are constructs of admiralty and contract law.  They do not apply to common law wrongs such as murder and fraud. In this case, the Statute of limitations is not applicable because Defendant has committed fraud, rebellion against the Constitution, and disobedience of the law.

41. Defendant's fraud in this case is easily discoverable.  Even Defendant's attorneys lied when they stood in court and claimed that amounts listed on 1099-B are taxable "income" when they are not (1099-B reflect "gross sales"), and that no illegality was committed in the collection process when Plaintiff outlined numerous illegal measures that remain un-rebutted.

42. The declarations of two IRS employees, Teresa Bustos and Shane Odd, and submitted by Defendant on January 29, 2009, implied that the assessments are true and correct, when they are not.  The declarants did not even state the specific sections of the Code based on which Plaintiff was found liable for the tax.  They did not specify whether the tax imposed is direct or indirect, and according to what taxing statutes.

43. Both Defendant and this Court ignored this Plaintiff's argument.  They did not claim that fraud, rebellion against the Constitution, and disobedience of the law do not exist in this case or that the statute of limitation applies despite their existence.

44. The Court's order is itself a fraud and therefore invalid: firstly, for ignoring the fraud in this case; and secondly for granting Defendant's summary judgment despite Defendant's fraud.

<u>If there is delay, it is excusable</u>

45.   As stated in oral arguments, the U.S. Supreme Court said that in equity, delay must depend on the particular circumstances of each case. *Hayward v. Eliot Nat. Bank*, 96 U.S. 611 (1877)

46.   According to the Tenth Circuit, delay will not bar relief where it has not worked injury, prejudice or disadvantage to defendant or others adversely interested. *Shell v. Strong*, 151 F.2d 909 (1945).

47.   Also according to the Tenth Circuit, laches consists of two elements: (1) inexcusable delay in instituting a suit; and (2) resulting prejudice to defendant from such delay. *Kadonsky v. U.S.*, 3 Fed.Appx. 898 (This case was not selected for publication in the Federal Reporter.)

48.   If there is delay in filing this lawsuit, neither Defendant nor the Court provided proof as to injury, prejudice, or disadvantage to the IRS as a result of this delay. The IRS cheats people every single day. What happened to Plaintiff is not simply a mistake committed by an IRS employee some years ago, but a routine fraudulent practice pursued by the agency.

49.   If there is a delay, it is an excusable delay. Plaintiff contested IRS actions throughout the time-period in state and federal courts, in tax

courts, and through correspondence with the IRS.  Plaintiff was not idle during this time.  She did what she could based on what she knew.

50.   To bar Plaintiff's action on the basis of the statute of limitations would be to reward the IRS for criminal acts – such as unjust enrichment - which contravenes the court's obligation to do substantial justice.

51.   An inability to seek legal relief on time cannot be used as an excuse to deny that relief, while Defendant is left with the fruits of an illegal act. The protection of Plaintiff's rights to her money and property, and the fact that said money was levied illegally, has more constitutional relevance than Plaintiff's expertise on statute of limitations.

52.   There are no statutes of limitations on the protections, rights, privileges, and immunities guaranteed to the people by the Constitution. If a man or woman is entitled to the protections guaranteed by the Constitution, then that man or woman may file a lawsuit seeking redress of grievances at any time.

## Summary

53.   Plaintiff did prove, under at least one situation or example case law presented herein that she has filed her lawsuit within the limitations period of section 7433.  The D.C. Court considered three scenarios under

all of which it found that Plaintiff filed her lawsuit timely.  This Court did not rebut all these three scenarios and erroneously granted Defendant's summary judgment without taking into consideration all of the D.C. Court's or Plaintiff's arguments.

54.   Taking plaintiff's allegations in the light most favorable to her, there are many genuine issues of fact that the Court has ignored.   There are triable issues that the Court refused to take into consideration without any explanation.

## III.   Statute of Limitations in Wyoming

55.   According to the Wyoming statutes, Title 39 dealing with taxation and revenue: "There are no specific applicable provisions for a statute of limitations for this chapter." W.S. 39-10-110.

56.   Federal courts can apply state statute of limitations in cases dealing with the same subject matter.   Since there is no statute of limitations for taxation and revenue in the state of Wyoming, then none should be considered or applied in this case.

57.   In the meantime, Plaintiff would like to make a correction that she is an inhabitant of Buffalo, Wyoming, and not a "resident."

**IV.    Equitable tolling**

58.    The Court argued that for Plaintiff to be "ignorant of her rights and the law" is not "a rare and exceptional circumstance in which the Court should equitably toll the statute of limitations." (Page 14)  That was the Court's only reason for rejecting Plaintiff's equitable tolling argument. However, in Plaintiff's memorandum opposing summary judgment (paragraphs 15-30), Plaintiff never said that she was "ignorant of her rights and the law."  She knew her rights and fought for them.

59.    Plaintiff simply agreed with the court in *Tenpenny* that she should not be doomed if she lacks "expertise with regard to knowledge of the admittedly complex regulations governing the statute of limitations."

60.    This Court denied equitable tolling on a faulty premise, and therefore, such a denial is void and must be reconsidered.

61.    The Court also said: "It is inherently inconsistent for the Plaintiff to file suit in 2001 regarding the exact actions of the IRS that she is challenging here . . ." Plaintiff's 2001-2002 suits were denied for not exhausting administrative remedies.   After she exhausted those remedies, she filed the suit again.  It is not clear where the inconsistency is. This Court did not cite a case prohibiting inconsistency, or as if Defendant has been consistent in all its dealings with Plaintiff.

62. In addition, the 2001-2002 lawsuits filed in Wyoming did not include all the years which encompass this lawsuit.

63. Moreover, the Court did not address Plaintiff's assertion that each IRS collection attempt is a new violation that tolls the statute of limitations.

64. When a tort involves continuous injury, the cause of action accrues when the tortious conduct ceases, and to hold otherwise would be to allow the tortfeasor to acquire a right to continue its conduct by virtue of the statute of limitations. (The D.C. court, citing *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984))

65. The IRS levy which resulted in monthly deductions from Plaintiff's pension check constitutes continuing harm, which did not cease until May 2006.  This case was filed within two years from May 2006.

66. In addition, the wrong Plaintiff complaints off has not ceased.  The "assessment" which the IRS used to justify the levy was not a single event, but continuous.  There was not one assessment, on one occasion, but multiple ones – each tolling the statute of limitations.

67. For example, according to a Defendant document page US-724: "the 2003 was processed with no liability . . ." However, according to an IRS letter dated December 1, 2008, Plaintiff owed $128.27 for year 2003 and is now to be refunded $2.68 after adjustments. (Exhibit A-10)

68.    If the statute of limitations as calculated by this Court is accurate, would it not also apply to the IRS?  If Plaintiff is being prevented from suing against a harm committed by the IRS, should not the IRS – under the same standard – be also prevented from keep harassing Plaintiff and change its "assessments" at will?  This Court is denying Plaintiff the due process to challenge a lingering injury emanating from multiple and distinct assessments for the same tax years.

69.    The IRS assessment and collection measures have not ceased. Plaintiff's Exhibits A-7, A-10, and A-12 clearly show that the IRS continues to change the assessment.  Each new assessment for the years in question, followed by a collection attempt, is a new violation that tolls the statute of limitations.

70.    This Court's ruling allows the defendant to continue illegal conduct indefinitely.   This Court's ruling promotes a manifest injustice, contrary to its responsibility to do equity and justice to the parties, and to view facts and law in the light most favorable to Plaintiff.

## CONCLUSION

71.    This Court did not take into consideration all the triable issues and all the facts on which a reasonable jury could find in Plaintiff's favor.

72.   Plaintiff's many years saga with the IRS has never been about her.  It has
      always been about the IRS, the Department of Justice attorneys, and
      those in the judicial system.   Instead of being a part of an honest
      endeavor contributing to the well-being of their country, they choose to
      protect the corruption that undermines it in exchange for a paycheck,
      benefits, and pension plans.

73.   They do not even realize that by undermining Plaintiff's rights they have
      actually undermined their own and their descendants'. Probably, that is
      the least of their concern.  What matters to them now is to "win" – i.e.,
      achieving "success" in robbing people and justifying the IRS robbery
      under the color of law.

74.   In a Biblical context, one measure of people's judgment is their
      acceptance or rejection of the truth. Each of the two choices leads to
      different outcomes or circumstances.

75.   In this case, Plaintiff is on the side of truth and seeks to express it and
      live by it.  On the other hand, there are those who ignore the truth, seek
      to suppress it, or even deny the public – whether a jury or anyone else –
      an opportunity to see it or understand it.

76.   Regardless of whether the Department of Justice files its own
      memorandum opposing reconsideration, regardless of whether the Court

reconsiders its decision or not, the truth – in the end – remains victorious; and divine justice has its own way of delivering its own judgment to each person according to their contribution on whether they live by the truth or oppose it, reject it, and suppress it.

77.   An elderly plaintiff spent all her life saving money so that she could retire.  The IRS steals her money, the Department of Justice defends the theft, and the Court covers up the scam through a discretion that is exercised only to harm the elderly plaintiff.   Something is very wrong with this system. This is not a practice of law, but the practice of evil.

WHEREFORE Plaintiff request that this Court's order of April 8, 2009 be reconsidered or vacated and Plaintiff be granted the relief and damages requested in this case.

Respectfully submitted,

__/s/Elias Aoun_____          DATED this 28th day of April, 2009
Elias Aoun, Esq. Bar Number 479315
2531 Trellis Green
Cary, NC 27518
E-mail: Lawyer2008@yahoo.com
Cell Phone: (202) 257-7796

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing

has been served upon the following by electronic filing on April 28th, 2009:


KELLY H. RANKIN
United States Attorney
CAROL A. STATKUS
Assistant United States Attorney
2120 Capitol Avenue, Room 4002
Cheyenne, Wyoming 82001

ADAIR F. BOROUGHS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, DC 20044


Attorneys for the United States


_____/s/ Elias Aoun___
ELIAS AOUN, ESQ.